(134 So. 246)

SAINT, Atty. Gen., et al. v. ALLEN et al.

No. 30926.

March 2, 1931.

Rehearing Denied April 1, 1931.

L. H. Perez, of New Orleans, for appellants.

Percy Saint, Atty. Gen., and E. R. Schowalter, Asst. to Atty. Gen., for appellees.

OVERTON, J.

This is a suit instituted by the Attorney General in his own behalf and in the name of the state against the Louisiana highway commission and the members thereof in their official capacities. Five attorneys at law, employed by the commission, were cited, together with these defendants, to answer the suit; though no judgment is specifically asked of the court against the attorneys.

The cause of action set forth is, substantially, that, although it is the mandatory duty of the Attorney General and his assistants to attend to and have charge of all legal matters in which the state has an interest, or to which the state is a party, under the provisions of the Constitution, the commission and its members, without authority in law, and against the provisions of the Constitution of 1921, creating the office of Attorney General, employed, without obtaining the approval of the Attorney General, if such were legally possible, the five attorneys, cited to answer the suit, as regular counsel for the commission, at salaries, aggregating some $14,000 per annum. It is also alleged that, if there should be any statute of this state, purporting to authorize such employment, such statute is in conflict with the provisions of the Constitution, creating the office of Attorney General, and defining the duties thereof, and is unconstitutional for that reason. It is further alleged that the expenditures for the salaries of the five attorneys are illegal and unconstitutional expenditures of the public funds of the state, and that, unless the commission and its members be enjoined from continuing to employ the attorneys, they will continue to do so, to the irreparable injury of the state. No injunction is asked for against the five attorneys.

Four of the attorneys filed exceptions to the jurisdiction of the court, ratione personæ, the fifth filed exceptions of misjoinder of parties defendant, and of no right or cause of action, as did also the commission and its members. These exceptions were overruled. The commission and the members thereof then filed an answer to the rule nisi, relative to the issuance of a preliminary injunction, and also to the petition. The case was submitted on the rule nisi and, on the merits, on an agreed statement of facts. Judgment was rendered on the rule nisi, ordering the preliminary injunction to issue against the commission and its members, and on the merits, perpetuating the injunction.

The case involves a consideration of Act No. 95 of 1921 (Ex. Sess.), creating the Louisiana highway commission, a consideration of sections 55 and 56 of article 7 of the Constitution of 1921, creating the office of Attorney General, and stating the duties and powers of that official, and Act No. 125 of 1912, as amended by Act No. 221 of 1920.

The commission was created by Act No. 95 of 1921 (Ex. Sess.) in carrying out the provisions of section 19 of article 6 of the Constitution of 1921, relative to establishing and maintaining a system of hard surface state highways and bridges. The act is quite lengthy, and it is wholly unnecessary to do more than state the substance of some of its provisions. The first section creates the commission. The third section establishes the domicile of the commission at the state capital, which is Baton Rouge, and also provides that "the Commission shall be a body corporate and as such may sue and be sued, plead and be impleaded, in any Court of Justice." The sixteenth section provides that every contract for highway improvement, under the act, must be made in the name of the State of Louisiana, be signed by the state engineer and the other contracting party, and approved by the commission, and that no such contract shall be entered into, nor shall any such work be authorized, which will create a liability on the part of the state in excess of the funds available for expenditure under the terms of the act. Section 18 provides that the cost of all highway and bridge construction, under the act, shall be paid out of the general highway fund, although local aid may be

received. This fund, as appears from the thirty-fourth section of the act, consists of all moneys, dedicated to the construction and maintenance of highways and bridges of the state by the Constitution or the Legislature, and any moneys received from the federal government. In the twentieth section the act provides that the state, acting through the commission, may acquire by purchase, lease, or donation, and may operate gravel beds, shell or rock deposits, and the like.

Sections 55 and 56 of article 7 of the Constitution, which it is necessary to consider also, read as follows:

"Section 55. There shall be a Department of Justice consisting of an Attorney General, a First Assistant Attorney General, a Second Assistant Attorney General, and other necessary assistants and office force. The Attorney General shall be elected every four years at the general State election, and the assistants shall be appointed by the Attorney General to serve during his pleasure.

"Section 56. The Attorney General and the assistants shall be learned in the law and shall have actually resided and practiced law, as duly licensed attorneys, in the State for at least five years preceding their election and appointment. They, or one of them, shall attend to, and have charge of all legal matters in which the State has an interest, or to which the State is a party, with power and authority to institute and prosecute or to intervene in any and all suits or other proceedings, civil or criminal, as they may deem necessary for the assertion or protection of the rights and interests of the State. They shall exercise supervision over the several district attorneys throughout the State, and perform all other duties imposed by law. * * *"

Act No. 221 of 1920, amending and re-enacting Act No. 125 of 1912, § 1, which it is also necessary to consider, omitting the repealing clause, which repeals all laws in conflict with the act, and omitting the date the act becomes effective, which is from and after its promulgation, reads as follows:

"The Attorney General of the State of Louisiana in the Parish of Orleans and the District Attorney of the several judicial districts of the State of Louisiana, other than the Parish of Orleans, shall ex-officio and without extra compensation, general or special, be the regular attorneys and counsel for the Police Juries and School Boards within the Parish of Orleans and within their respective Districts and of every State Board or Commission domiciled therein, including Levee Boards, Hospital and Asylum Boards, Educational Boards, and all State Boards or Commissions, the members of which, in whole or in part, are elected by the people, or appointed by the Governor or other prescribed authority, except all State Boards and Commissions domiciled at the City of Baton Rouge, Parish of East Baton Rouge, and all Boards in charge or in control of State institutions; and it shall be unlawful for any Police Jury, School Board, or State Board or Commission to retain or employ for any compensation whatever any attorney or counsel to represent it generally, or except as hereinafter provided, to retain or employ any special attorney or counsel for any compensation whatever to represent it in any special matter, or pay any compensation for any legal services whatever; provided that the Board of Commissioners of the Port of New Orleans shall select its own attorney who shall also be the attorney for the Orleans Levee Board, without additional compensation from said Levee Board. Provided further that the provisions of this Act shall not apply to the Board of Assessors of the Parish of Orleans, the salary of whose attorney is

paid by the City of New Orleans, and Board of School Directors of the Parish of Orleans, for which Boards the City Attorney of the City of New Orleans is hereby constituted ex-officio Attorney."

As the act of 1920 re-enacts only the first section of Act No. 125 of 1912, reference must be had to the remaining sections of the latter act, in ascertaining the legislative will in regard to the employment of attorneys for boards and commissions.

The second section of the act of 1912, which we find unnecessary to quote, provides, substantially, that, should it become necessary to protect the public interest, "for any State Board or Commission to retain or employ any special attorney or counsel to represent it in any special matter for which services any compensation is to be paid by it," such retention or employment may be made solely on the joint written approval of the Governor and the Attorney General of the state, showing the amount of compensation, which both agree should be paid, the approval to be given only upon the application of the board or commission, shown by resolution, setting forth fully the reasons for the proposed retention or employment, and the amount of the proposed compensation.

The third section of the act of 1912 prohibits any police jury or parish school board from retaining or employing any special attorney or counsel to represent it in any special matter or pay any compensation for legal services unless a real necessity exists therefor, made to appear by resolution, stating fully the reasons for such action and the compensation to be paid, the resolution to be spread upon the minutes and published in the official journal of the parish.

The fourth section of the act provides that it shall be malfeasance and gross misconduct, subjecting them to removal from office, for district attorneys to refuse or willfully fail to render faithful and efficient services in regard to the duties imposed upon them by the act, and makes it a misdemeanor for them so to fail or refuse. The section also renders members of police juries, of parish school boards, and of state boards or commissions, subject to removal from office for malfeasance and gross misconduct, and also makes it a misdemeanor, for them to violate any of the provisions of the act, and makes it a misdemeanor for an attorney or counselor at law to accept, knowingly, employment or compensation prohibited by the act.

The fifth section empowers the Governor, in his discretion, to require and direct the Attorney General to render any police jury, parish school board, or state board, special services in any matter, and when deemed necessary, in the case of a state board or commission, to assume full charge and control of all legal proceedings, relating to such matter, and the sixth section repeals all laws in conflict with the act.

In ascertaining whether or not the Louisiana highway commission has authority to employ counsel to act for it generally and specially, it is necessary to interpret sections 55 and 56 of article 7 of the Constitution of 1921, which we have quoted above. Section 55 merely creates the department of justice, which is to consist of an Attorney General, and a first and second assistant, and other necessary assistants and office force, and provides for the election of the Attorney General, and fixes his term of office, and provides for the appointment of his assistants. What the office of Attorney General may imply at common law by the mere mention of its name is not important here. The duties and powers of the office are defined in section 56 of

article 7 of the Constitution, and the acts of the Legislature, not inconsistent with it.

Section 56 of article 7 of that instrument, as we have seen, defines the duties of the Attorney General and his assistants to be to "attend to, and have charge of all legal matters in which the State has an interest, or to which the State is a party, with power and authority to institute and prosecute or to intervene in any and all suits or other proceedings, civil or criminal, as they may deem necessary for the assertion or protection of the rights and interests of the State," and requires them to exercise supervision over district attorneys throughout the state, and to perform all other duties imposed by law.

 Under this provision it is the duty of the Attorney General and his assistants to prosecute and defend all suits or other legal proceedings to which the state is a party, and to have charge of all legal matters in which the state, as a distinct entity, apart from other entities or corporate agencies it may create, has an interest. It was not intended that the word, "interest," used in this section, should be received or interpreted in its broadest sense, in connection with the interests, possessed by the state. Such an interpretation would make the accomplishment of the duties of the Attorney General and his assistants, next to impossible, if not impossible. Therefore, so far as relates to the Constitution, that instrument, with reference to the duties of the Attorney General and his assistants, has confined, by implication, the duties, there demanded to be rendered, to those interests, possessed by the state, as a distinct entity, and has left it to the Legislature to impose such other duties upon those officials as it may deem proper to do from time to time.

 If the Louisiana highway commission is a distinct legal entity from the state, then there would seem to be no reason, so far as relates to the Constitution, why the Attorney General and his assistants should be deemed to be the attorneys for the commission, and why other arrangements could not be made, under legislative authority, for the selection of attorneys by the commission.

The commission, in our opinion, is a distinct legal entity from the state. Section 3 of Act No. 95 of 1921 (Ex. Sess.) makes it a body corporate, with power as such to sue and be sued. It is an agency of the state, and not the state itself, created for the purpose of executing certain duties, devolving primarily upon the state. In a general sense, in its relations to the state, it is not dissimilar to levee districts, which are bodies corporate, created for the purpose of constructing and maintaining levees, which are duties, devolving primarily upon the state. It was held in State v. Standard Oil Co., 164 La. 334, 357, 113 So. 867, and in State v. Tensas Delta Land Co., 126 La. 59, 52 So. 216, that a levee district, though the creature and an agency of the state, had, as long as it was permitted to exist, a separate existence from the state, and that the state could not sue on causes of action accruing to the district. Nor, in a general sense, is the commission dissimilar, in its relations to the state, to the board of commissioners of the port of New Orleans, concerning which it was held that the board, as a body corporate, had a separate existence from the state, and, though an agency thereof, did not enjoy the immunity from the prescription, liberandi causa, enjoyed by the sovereign. Board of Commissioners of Port of New Orleans v. Toyo Kisen Kaisha, 163 La. 865, 113 So. 127. These cases are pertinent here for the purpose of showing that the

Louisiana highway commission is a separate legal entity from the state.

However, it may be said that the ruling, as to the separate existence of the commission, is not well taken here, because the act, creating it, provides that all contracts for highway improvement shall be made in the name of the state, and that the state, acting through the commission, may acquire gravel beds, and the like, by purchase, lease, or donation, and that the state provides the commission with funds with which to discharge the purposes of its creation. Sections 16, 23, 34, Act No. 95 of 1921 (Ex. Sess.). These facts, however, are insufficient to make the commission and the state one and the same. They merely show that the commission is an agency of the state. It does not even follow that, because contracts for highway improvements must be entered into in the name of the state, suits on such contracts should be brought by the state or against it, for the commission, as a body corporate, is given express power to sue and be sued, which shows that such suits (which might be reasonably expected to constitute the greater part of the litigation in which the commission might become involved) should be instituted by the commission, and not by the state.

Our conclusions therefore are that the Constitution, in defining the duties of the Attorney General and his assistants, confines those duties, by implication, to the state, as a distinct entity from its corporate agencies, and to the duties imposed upon those officials by law, and that the Louisiana highway commission is one of those agencies, and hence the duties and powers of the Attorney General and his assistants do not, by virtue of the Constitution, save as some of those duties may be prescribed by statute, attach to the commission.

Having reached these conclusions, the question arises whether any statute of the state imposes upon the Attorney General and his assistants the duty of representing the commission, and this, to the exclusion of the right, on the part of the commission, to employ other counsel.

The only statute that throws any light on the question, in our opinion, is Act No. 125 of 1912, as amended by Act No. 221 of 1920, relied upon by defendants, the amendatory act, with the exception of the repealing clause, and the clause, relating to the date the act became effective, being quoted in full in the first part of this opinion, and the unamended part of the amended act being there fully outlined. This act, in our view, supports the contention of the commission and its codefendants that the Attorney General and his assistants are not the legal representatives of the commission, and that the district attorney of the parish of East Baton Rouge, in which the board is domiciled, is not such representative.

Section 1 of the amendatory act, to repeat it here, in part, for the purpose of convenience, provides:

"That the Attorney General * * * in the Parish of Orleans and the District Attorney[s] of the several judicial districts of the State of Louisiana, other than the Parish of Orleans, shall ex-officio and without extra compensation, general or special, be the regular attorneys and counsel for the Police Juries and School Boards within the Parish of Orleans and within their respective Districts and of every State Board or Commission domiciled therein, including Levee Boards, Hospital and Asylum Boards, Educational Boards, and all State Boards or Commissions, the members of which, in whole or in part, are elected by the people, or appointed by the

Governor or other prescribed authority, except all State Boards and Commissions domiciled at the City of Baton Rouge, Parish of East Baton Rouge, and all Boards in charge or in control of State institutions. * * * "

The act, as appears from the foregoing excerpt, makes the Attorney General, in the parish of Orleans (evidently because his office is located there) the regular attorney and counsel for certain boards, domiciled in that parish, and the district attorneys of the several judicial districts of the state, the parish of Orleans excepted, the regular attorneys and counsel of certain boards, domiciled in their respective districts, except all state boards and commissions, domiciled in the city of Baton Rouge. Obviously, as to state boards and commissions, domiciled in the city of Baton Rouge, which is the capital of the state, the district attorney of East Baton Rouge is not required to represent them, as he comes within the exception, and, as to the Attorney General, the act excludes him, if not otherwise, by limiting his duties, as counsel for such boards, to boards domiciled in the parish of Orleans, for his services are to be rendered to boards domiciled therein, with certain exceptions, later named in the act, and unnecessary to mention.

It has been suggested, however, that this construction cannot be correct, because the amendatory act prohibits the employment of any attorney by any police jury, school board, or state board or commission to represent it, for any compensation whatever, except as provided by the act as amended, which is upon the joint approval of the Governor and the Attorney General, and only in special matters, and because the amended act, namely Act No. 125 of 1912, in the fourth section thereof, makes it a misdemeanor to violate any of the provisions of the act. This prohibition and the denunciation that follows, however, in the very nature of things, are not applicable to those boards and commissions for which no provision has been made and to which the act does not apply.

█ The commission is domiciled in the city of Baton Rouge, and is therefore excluded from the operation of the act. There is nothing, in our view, in the act, in conflict with sections 55 and 56 of the Constitution of 1921, nor in violation of article 97 of the Constitutions of 1898 and 1913, under which, respectively, the original and amendatory acts were passed, and hence these acts constitute valid legislation.

█ The commission has the implied power to employ counsel, under section 3 of Act No. 95 of 1921 (Ex. Sess.), arising out of the power to sue and be sued, there conferred upon it.

For the reasons assigned, the judgment appealed from is set aside, the injunction issued is dissolved, and plaintiffs' demands are rejected.

O'NIELL, C. J. (dissenting).

Act No. 125 of 1912, as amended by Act No. 221 of 1920, declares that "it shall be unlawful for any Police Jury, School Board, or State Board or Commission to retain or employ for any compensation whatever any attorney or counsel to represent it generally, or, except as hereinafter provided, to retain or employ any special attorney or counsel for any compensation whatever to represent it in any special matter, or pay any compensation for any legal services whatever." There is no exception as to state boards or commissions domiciled in the parish of East Baton Rouge. The only exception made with regard to state boards or commissions domiciled in the parish of East Baton Rouge is that the district attorney for the Nineteenth judicial district, which comprises the parish of East

Baton Rouge, is not, ex officio, the attorney for such boards, as the district attorney in every other judicial district, outside of New Orleans, is, ex officio, attorney for every state board or commission domiciled in his district.

The reason, manifestly, why the legislature —in making the district attorney in each judicial district (outside of New Orleans) attorney, ex officio, of the state boards or commissions domiciled in his district—excepted the district attorney for the judicial district comprising the parish of East Baton Rouge is that there are so many more state boards and commissions domiciled in the parish of East Baton Rouge than there are domiciled in any other parish in the state. But there was no reason why the state boards or commissions domiciled in the parish of East Baton Rouge should have been excepted from the prohibition against the employment of attorneys to represent state boards or commissions generally, or to represent them in any special matter without complying with the requirements of the second section of the statute. That is why the statute does not except or exempt from the prohibition against such unlawful practice the state boards or commissions domiciled in the parish of East Baton Rouge.

In the prevailing opinion rendered in this case, the majority of the members of the court have interpolated an exception where the statute makes none. And the only reason given for the interpolation is that the prohibition is "not applicable to those boards and commissions for which no provision has been made and to which the act does not apply." There is nothing in the act which says that it does not apply to state boards or commissions domiciled in the parish of East Baton Rouge. There is a proviso, at the end of the first section of the act, declaring that it shall not apply to certain specified boards and commissions, but there is no proviso that it shall not apply to state boards or commissions domiciled in the Parish of East Baton Rouge.

I respectfully submit that, in the prevailing opinion rendered in this case, the majority of the members of the court overlook the avowed purpose of the act of 1912. Its purpose was to forbid every subdivision, board, commission, and agency of the state to spend the taxpayers' money by employing attorneys to represent any such subdivision, board, or commission, generally, or by employing an attorney to represent it in any special matter without the approval of the Governor and Attorney General. There was surely no reason for excepting from the prohibition the state boards or commissions domiciled in the parish of East Baton Rouge; hence no such exception was made. The interpolation of the exception, by the court, does not only usurp the function of the legislative department, but defeats its very purpose.

The lengthy argument, made in the prevailing opinion in this case, to demonstrate that the highway commission is not the state itself, is beside the question. No one has contended that the highway commission is the state, or that it is anything more than a state agency or commission. What was decided in State v. Standard Oil Co., 164 La. 334, 113 So. 867, and in the companion case of Board of Commissioners v. Hardtner, 164 La. 632, 114 So. 494, and in State v. Tensas Delta Land Co., 126 La. 59, 52 So. 216, and United States ex rel. Louisiana v. Jack, Judge, 244 U. S. 404, 37 S. Ct. 605, 61 L. Ed. 1227, was that the Attorney General should bring his suit, not in the name of the state, but in the name of the state agency, or subdivision, on a right of action belonging to such agency or subdivision.

The declaration in the prevailing opinion in this case that, "by implication," section 56 of article 7 of the Constitution has confined the duties of the Attorney General and his assistants "to be rendered to those interests possessed by the state as a distinct entity" is indeed a novel proposition. That section of the Constitution declares that the Attorney General, or one of his assistants, "shall attend to, and have charge of all legal matters in which the State has an interest," etc. It is said in the prevailing opinion in this case that the word "interest," as here used, is not to be interpreted in its broadest sense. The substance of the argument on that subject, in the prevailing opinion, is that the state has not an "interest," in the sense in which the word is used in section 56 of article 7 of the Constitution, in a case where a state board or commission is the plaintiff or defendant. I respectfully submit that it has never before been so considered, in this or any other jurisdiction in the United States. 2 R. C. L. 913; 6 C. J. 812, § 18; State v. Finch, 128 Kan. 665, 280 P. 910, 911, 66 A. L. R. 1369. If the state has not an "interest" in matters affecting particularly a state board or commission, why should it be provided in the last sentence of section 56 of article 7 of the Constitution: "They [the Attorney General and his assistants] shall exercise supervision over the several district attorneys throughout the State," etc.? And why should the fifth section of Act No. 125 of 1912 provide that the Governor may, in his discretion, require the Attorney General to render special services to any police jury, parish school board, or state board, or to assume control of a case in which a state board is a party, notwithstanding the district attorney is, primarily, the attorney, ex officio, of such political corporation or state board? Having the power of supervision over the district attorneys, the Attor-

ney General has, necessarily, the authority to represent, as chief counsel, so to speak, any of the subdivisions or state agencies of which the district attorneys, respectively, are the attorneys, ex officio; and the Governor may, at any time, compel the Attorney General to exercise his authority in that respect.

In State ex rel. Miller, District Attorney, v. Reid, Sheriff, 45 La. Ann. 162, 12 So. 189, 190, where the district attorney saw fit not to appeal from an adverse judgment in a suit against intrusion into office, and the Attorney General took an appeal, and his authority so to do was challenged, the court said:

"While it is not doubted that the attorney general had no power or authority, in law, to institute suit *as relator*, it is equally clear and undoubted that he has the capacity to appear in this court and represent the *interest* of the state in any given controversy. The duties of that officer are particularly defined in the Revised Statutes, and they declare, inter alia, 'that he shall appear for the state in the supreme court sitting in New Orleans, and prosecute and defend all appeals in cases, criminal or civil, in which the state may be a party, or *interested*.' Rev. St. § 131." (The italics are mine.)

In that case the word "interest" or "interested" was not given the narrow interpretation which it is given in the prevailing opinion in this case.

In State v. Bank of Louisiana, 5 Mart. (N. S.) 327, it was said:

"The authority of the attorney-general to prosecute or defend any suit, in which the state is concerned, does not, however, result from mere presumption. *It is necessarily implied from the nature of his office,* and is expressly given by the act of assembly, defining his duties." (The italics are mine.)

In Succession of Fletcher, 12 La. Ann. 498, it was held that the auditor of public accounts could not ignore the Attorney General and employ other counsel to represent him in his official capacity. And, in Fay, Superintendent of Public Education, v. Jumel, Auditor, 35 La. Ann. 368, it was held:

"The Superintendent of Public Education has no authority in law to appear in person or by private counsel in any suit or other legal process in which he may be a party or interested in his official capacity, but must be represented by the Attorney General or local District Attorney. Any suit instituted by such a ministerial officer in his official capacity, by a private counsel, shall be dismissed by the court ex proprio motu, or on motion."

It is said in the prevailing opinion in this case, with regard to the authority of the Attorney General to represent the state boards and commissions: "Such an interpretation [of section 56 of article 7 of the Constitution] would make the accomplishment of the duties of the Attorney General and his assistants, next to impossible, if not impossible." But the author of that statement overlooks the fact that section 55 of the same article of the Constitution provides that the department of justice shall consist, not only of the Attorney General and a First Assistant and a Second Assistant, but also of all "other necessary assistants and office force." All that the act of 1912 requires in that respect is that there shall be no regular attorney employed to represent any state board or commission or state agency, other than the district attorney, the Attorney General, or an Assistant Attorney General, and that there shall be no attorney employed to represent any such board or commission or state agency in any special matter, except with the approval of the Governor and the Attorney General, and on com-

pliance with the requirements of the second section of the statute. To that end, the Constitution puts no limit on the number of assistants the Attorney General may have. Hence there is nothing impossible, or even "next to impossible," in the performance of the duties imposed by law upon the Attorney General and his assistants.

There is no instance in the history of the state where it has been held or intimated, heretofore, that the Attorney General has not, by the very nature of his office, the authority to represent the state boards and commissions, as their attorney at law.

It cannot be doubted that, before the Act No. 125 of 1912 was adopted, the Attorney General and his assistants were, ex efficio, attorneys for the state boards and commissions domiciled in the parish of East Baton Rouge. Therefore, to say that Act No. 125 of 1912 has taken away from the Attorney General and his assistants the authority to represent these state boards and commissions, and has given to them the authority to employ private counsel, is the same as to say that the statute has had an effect which is directly opposed to the avowed object and purpose of the statute. And that result is accomplished by interpolating an exception, to the provisions of the statute, which the Legislature did not see fit to make.

ODOM, J. (dissenting).

I cannot concur in the majority opinion. It holds that the highway commission has authority to select and employ counsel at the expense of the state without the approval of the Attorney General.

Section 55, art. 7, of the Constitution of 1921 creates a department of justice for the state consisting of an Attorney General to be elected every four years and such assistants

as he may select. By section 56 of that article the Attorney General or one of his assistants "shall attend to, and have charge of all legal matters in which the State has an interest, or *to which the State is a party*." (Italics here and elsewhere in this opinion are the writer's.)

In the majorty opinion it is said:

"Therefore, so far as relates to the Constitution, that instrument, with reference to the duties of the Attorney General and his assistants, has confined, by implication, the duties, there demanded, to be rendered, *to those interests, possessed by the state, as a distinct entity*, and has left it to the Legislature to impose such other duties upon those officials as it may deem proper to do from time to time."

And again:

"If the Louisiana Highway Commission is *a distinct legal entity from the state*, then there would seem to be no reason, so far as relates to the Constitution, why the Attorney General and his assistants should be deemed to be the attorneys for the commission, and why other arrangements could not be made, under legislative authority, for the selection of attorneys by the commission."

There can be no dissent from the proposition that, as a matter of law, it is not only the prerogative but the duty of the Attorney General, who is made the head of the department of justice, to act as counsel for and represent the state in all matters wherein the state is interested or is a party "as a distinct entity."

Now, in so far as the majority opinion so holds, I unreservedly concur. But in order to reach the conclusion announced, it is held that the highway commission "is a distinct legal entity from the state." From that holding I respectfully, but most emphatically, dissent.

Section 19 of article 6, Constitution of 1921, provides that:

"The Legislature shall provide for the establishment and maintenance of a system of hard surface State highways and bridges, under the supervision of the Board of State Engineers, until otherwise provided by law, and shall provide for a general highway fund for the construction and maintenance thereof."

At its Extra Session in 1921 the Legislature adopted Act No. 95:

"To carry into effect the provisions of the Constitution of 1921 in relation to the establishment and maintainance of a system of State Highways and bridges; to create a Louisiana Highway Commission; to prescribe its duties, functions and powers."

I think it clear that the Legislature intended that the building and maintenance of the roads and bridges authorized by the Constitution was to be done by the state in its sovereign capacity "as a distinct entity." Wherever roads are mentioned, they are referred to as "state roads." Section 16 provides in precise language: "That every contract for highway improvement under the provisions of this Act *shall be made in the name of the State of Louisiana*."

Section 23 provides: "That the State of Louisiana, *acting through the Commission*, may acquire by purchase, lease, or donation, and may operate any gravel bed, shell or rock deposit * * * for the construction and maintainance of State Highways."

Section 27 provides that, in all cases where it is necessary to construct or widen a state highway, "the right of way therefor may be acquired by the State, road district, parish, city, town or village, either by purchase or by donation, or by expropriation, under the general laws of the State * * * in the

event the owner of said property and the Commission, *representing the State*, should not agree upon the price thereof. The Commission is hereby authorized and empowered to bring such expropriation proceedings *in the name of the State.* * * * In the event of the purchase or expropriation by the Commission, *acting for the State*, of such rights-of-way, the compensation therefor, as provided herein, shall be paid from the General Highway Fund."

In section 28 of the act it is provided that "*when the State builds a highway* across a canal the bridge should be paid for out of the General Highway Fund."

Now if the statute means what it says in plain English, every act and every move made looking to the establishment of a highway system in this state is done and made by the state in its sovereign capacity, "as a distinct entity."

The highways and bridges are not built and maintained by the highway commission, but by the state through the commission as its agent. The state does not act and cannot act except by and through its agents. In order that it might act under the constitutional mandate to build a system of hard surface state roads and bridges, the state created an agent to act for it. That agent is the Louisiana highway commission, which is constituted a body corporate in law. It is a legal entity it is true, but it is not "a distinct legal entity from the state," as the majority opinion holds.

The state has power to create, and has in many instances created, corporations to act for it with such unlimited and far-reaching powers that they may be said to be separate legal entities from the state. But the Louisiana highway commission is not one of them. It is a state agency with most limited and restricted powers. It has no general powers.

It can perform no governmental functions like a levee board or commission. It does not act in its own name and capacity except in purely incidental matters. It does not and cannot contract in its corporate name and capacity. The act creating it specifically provides "that every contract for highway improvement under the provisions of this Act shall be made in the name of the State of Louisiana." Such contracts are not even signed by the commission, but by the highway engineer and approved by the commission. The commission does not acquire gravel beds, etc., for the construction of roads, but the state itself may acquire such "*acting through the Commission.*" The state may acquire rights of way by purchase, provided the owner of the land and the commission "representing the state," not itself, can agree upon the price, and, when the land necessary for the rights of way must be acquired by the state through expropriation proceedings, the commission is authorized to "bring such proceedings in the name of the state." And in case these rights of way are acquired by the state through purchase or expropriation "by the Commission acting for the state," the price is paid out of the general highway fund.

It is thus clear that the highway commission is the agent of the state in the most limited sense. In no sense, I think, can it be said that it is a separate and distinct entity from the state.

The Legislature used unmistakable language, line upon line, to show, first, that the highways and bridges were to be built and maintained by the state in its sovereign capacity, "as a distinct entity," and, second, that the commission was to act, not in its corporate name and capacity, but always for and in the name of the state.

Now since the state makes all contracts for the building of roads in its own name, ac-

quires rights of way and other property for that purpose for itself and in its name, and brings expropriation suits, in sum, builds the roads, it follows necessarily that it is not only interested in but is in fact a real party to every transaction had and made in connection with the building of roads, and, as the Attorney General is counsel and adviser for the state, and "shall attend to and have charge of all legal matters in which the state has an interest or to which it is a party," it is his duty to attend to all legal matters which may arise in the course of the road building now under way in this state.

The highway commission has no need for or right to employ special counsel, and certainly no right to use the funds of the state to pay attorneys' fees.

In the majority opinion it is said, speaking of the highway commission:

"In a general sense, in its relations to the state, it is not dissimilar to levee districts, which are bodies corporate, created for the purpose of constructing and maintaining levees, which are duties, devolving primarily upon the state."

As pointed out, this court held in the cases of State v. Standard Oil Co., 164 La. 334, 113 So. 867, and State v. Tensas Delta Land Co., 126 La. 59, 52 So. 216, that a levee district, though a creature of the state, has a separate existence from the state, and that the state could not sue on a cause of action accruing to such district.

The organ of the court lays down the premise that the highway commission is not dissimilar to levee districts, and from that premise it is reasoned that the highway commission also has a separate and distinct existence from the state. The reasoning is sound, but the conclusion is wholly erroneous. A correct conclusion cannot be reached by reasoning from a false premise, and I use the word "false" in the sense that the premise is incorrect.

The Legislature of 1886 by separate acts created the Tensas Basin Levee District (Act No. 59), the Fifth Levee District (Act No. 44), the Atchafalaya and Bayou des Glaize special levee district (Act No. 103), and later, by other and separate acts, created the Pontchartrain levee district, the LaFourche Basin levee district, and the Lake Borgne district. These acts are of a similar nature and contain practically the same provisions relative to the duties, rights, privileges, and powers of levee districts.

Referring to Act No. 59 of 1886, creating the Tensas Basin levee district, we find that it provides for a board of levee commissioners, which "shall be and they are hereby constituted and created into a body politic with corporate powers; they shall have power to sue and shall be sued in their corporate name, and shall have a seal, and shall have the power to do and perform all the purposes of this act." Section 3.

Section 1 of the act provides that "the purposes of this district shall be the raising, by taxation or otherwise, a revenue to protect the lands therein from inundation; said taxation to be levied on the lands and other property in said district, subject to taxation for levee purposes."

In section 5 it is provided that, for the purpose of raising revenue, the said board is authorized to levy annually such taxes as may be authorized by article 214 of the Constitution, and by section 9 the board is authorized, for the purpose of raising additional funds, to levy an annual contribution or assessment upon land, not to exceed ten cents an acre, and under section 10, for the purpose of rais-

ing further additional funds, the board is authorized and empowered to issue bonds signed by the president of the board officially under its seal.

By Act No. 77 of 1888 the Legislature donated to the board all lands belonging to the state or that it might thereafter acquire within the limits of the district which "shall be, and the same hereby are given, granted, bargained, donated, conveyed and delivered unto said board of levee commissioners." Section 2. The board was given power and authority to sell, mortgage, pledge, or otherwise dispose of said lands in such manner and at such times and for such prices as it might see fit.

This act and each of the others creating levee districts specifically provided that the title to the lands donated to them by the state should be vested in the board and owned by them absolutely.

The distinction between these boards and the highway commission, as created by Act No. 95 of 1921 (Ex. Sess.) is marked and manifest. Not only are these levee boards bodies corporate in law, but they act and make contracts, sue and may be sued, not in the name of the state, but in their own corporate names, and have a seal. They build levees, not in the name of the state, but in their own names. More than that, they are given power to levy taxes and to issue bonds, not in the name of and for the state, but in their own names, signed by the president under their own seal. They own lands under fee-simple title and have power to sell them at will and at such prices as they may fix. They have powers as drastic and as far-reaching as municipal corporations. These acts go so far as to give them police power over the levees. The state has in unequivocal terms vested in these boards all power and authority over the building of levees and put into their hands the machinery of taxation in order that they may raise the funds for that purpose.

Necessarily, therefore, the court has consistently held, in cases where the issue was raised, that these boards have rights and causes of action with which the state has nothing whatever to do, and, further, that they are in a sense separate and distinct entities from the state. But the same cannot be said of the highway commission, which, as I have already said, has but limited powers and can do nothing except in the name and on behalf of the state.

By referring to Act No. 125 of 1912, as amended by Act No. 221 of 1920, it will be found that no board or commission in this state, it matters not of what nature or character it may be, has authority to employ attorneys to represent it generally, or in special cases without the approval of both the Governor and the Attorney General. They are specially prohibited from doing so.

Section 1 of the act of 1912, as amended, provides that the Attorney General in the parish of Orleans, and the district attorneys in all other parishes of the state, shall, ex officio and without extra compensation general or special, "be the regular attorneys and counsel for the Police Juries and School Boards within the Parish of Orleans and within their respective Districts and of every State Board or Commission domiciled therein, including Levee Boards, Hospital and Asylum Boards, Educational Boards and all State Boards or Commissions * * * except all State Boards and Commissions domiciled at the City of Baton Rouge, Parish of East Baton Rouge, * * * and it shall be unlawful for any Police Jury, School Board, or State Board or Commission to retain or employ for any compensation whatever any attorney or

counsel to represent it generally, or except as hereinafter provided, to retain or employ any special attorney or counsel for any compensation whatever to represent it in any special matter, or pay any compensation for any legal services whatever."

The majority opinion holds that this "provision and denunciation" is not applicable to those boards and commissions for which no provision has been made "and to which the act does not apply."

If the Legislature had intended to exempt those boards and commissions domiciled in Baton Rouge from this prohibition, it would have said so. The act, after providing that the district attorneys throughout the state should be ex officio attorneys for all state boards and commissions domiciled in their respective districts, especially relieved the district attorney of East Baton Rouge parish from the duties of representing state boards and commissions domiciled in that parish, and immediately following this exception is the statement that "it shall be unlawful for any Police Jury, School Board, or State Board or Commission to retain or employ for any compensation whatever any attorney or counsel to represent it generally, or except as hereinafter provided, to retain or employ any special attorney," etc. The clause, "or except as hereinafter provided," refers to section 2 of the act, which is to the effect that, in case it should become necessary "for any state board or commission to retain any special counsel to represent it, it shall have power and authority to do so by obtaining the approval of the Governor and the Attorney General."

It is perfectly clear to me that the lawmakers did not overlook these state boards and commissions, but especially took care of them in section 2 of the act. The state boards

and commissions domiciled at Baton Rouge have their offices there and are under the eye of the Governor, who is authorized by section 5 of the act to require and direct the Attorney General to render to them any special services which they may need.