275 So.2d 207 (1973)
STATE of Louisiana ex rel. William J. GUSTE, Jr., Attorney General
v.
Louisiana BOARD OF HIGHWAYS et al.
No. 9214.
Court of Appeal of Louisiana, First Circuit.
February 28, 1973.
Rehearing Denied April 9, 1973.
Kendall L. Vick, New Orleans, and William J. Guste, Jr., Atty. Gen., Baton Rouge, for appellant.
Charles W. Roberts (Burton & Roberts), Baton Rouge, for appellees.
Before SARTAIN, BLANCHE, and WATSON, JJ.
BLANCHE, Judge.
This is a devolutive appeal by plaintiff, State of Louisiana ex rel. William J. Guste, Jr., Attorney General, from the judgment of the trial court maintaining the peremptory exceptions urging no cause of action and no right of action filed on behalf of defendants-exceptors, the Louisiana Board of Highways and the Louisiana Department of Highways, and dismissing plaintiff's suit as to these two defendants. We affirm.
The trial judge in Written Reasons for Judgment ably summarized the factual situation giving rise to this litigation and the legal principles supporting the judgment which he rendered, from which Written Reasons we reproduce with approval the following excerpts:
"In a suit testing the authority of the State over one of its departments, the *208 State of Louisiana, through its Attorney General, William J. Guste, Jr., has instituted this action for a preliminary injunction and declaratory judgment against the Louisiana Board of Highways, the Department of Highways and the First National Bank of Jefferson. The State's petition asks that the Board and Department of Highways be enjoined from cashing any check or expending any of the funds representing $188,831.40 received in settlement of a claim against the First National Bank of Jefferson. The petition further alleges that the compromise or settlement made among the defendants be declared ultra vires and be set aside in view of the fact that such agreement to compromise or settle was made without the consent of the Attorney General.
"The State avers that from 1960 to 1966 the Board and Department of Highways deposited and withdrew idle state funds in the approximate amount of $23,000,000.00. The State says these idle funds were deposited in a non-interest bearing account contrary to the requirements of LSA-R.S. 39:462, with a resulting loss to the State of approximately $820,000.00 for the aforementioned period. The State further alleges that Board and Department of Highways' claim for the lost interest was compromised or settled by an agreement the latter entered into with the First National Bank of Jefferson Parish on April 27, 1972. The State through its Attorney General contends that the settlement was ultra vires since the final responsibility to settle disputes involving state agencies rests with the Attorney General pursuant to Article VII, Section 56 of the Louisiana Constitution. The settlement is also alleged to be ultra vires because the defendants knew that the Attorney General had the claim under investigation for possible criminal or civil action, but despite this fact, nevertheless entered into the disputed compromise and settlement. The petition alleges the State will suffer irreparable injury if the proceeds from the settlement are spent by the Board and Department of Highways and that it is necessary for a preliminary injunction to issue to prevent such a loss. The remaining relief sought by the State is to have the settlement entered into among the defendants annulled, recognizing the paramount interest of the State.
"The only exhibits submitted by the parties in the suit are: a copy of the compromise agreement referred to above, an authorization by the Board of Directors of the defendant bank to enter the compromise, and a copy of a letter from Mr. Guste's predecessor as Attorney General, Jack P. F. Gremillion, indicating the Attorney General's interest in delaying any settlement in the matter. The parties have stipulated that these documents are authentic and correct. They have further stipulated that the check received by the Department of Highways in connection with the settlement agreement was already deposited by the Department in its General Highway Fund prior to the filing of this particular lawsuit.
* * * * * *
"The exception of no right and no cause of action raises the primary issue for consideration by the Court. The exceptors argue that the Board and Department of Highways is a separate and distinct entity from the State, having the power to sue and be sued similar to an independent corporation. They further argue that since the State nor the Attorney General were parties to the settlement, neither the State nor the Attorney General has any interest whatsoever in the compromise agreement. The State alleges that its interest in instituting an action for declaratory judgment is founded on LSA-Constitution Article VII, Section 56. The pertinent part of that section reads as follows:
`* * * They, or one of them [The Attorney General or his assistants], shall attend to, and have charge of all legal matters in which the State has an interest, or to which the State is a party, with power and authority to institute and *209 prosecute or to intervene in any and all suits or other proceedings, civil or criminal, as they may deem necessary for the assertion or protection of the rights and interest of the State.' (Parenthetical explanation and emphasis supplied by the Court)
"The State argues that this section gives it power to approve or reject the compromise agreement at issue herein, particularly in view of the outgoing Attorney General's letter to the exceptors expressing the State's interest in the claim held by the exceptors. The State further argues that its interest is manifest by reason of LSA-R.S. 39:131, which requires collections of any kind made by state agencies or departments to be deposited into the State Treasury. The reasoning here is that the settlement proceeds are such collections, therefore susceptible of being characterized as state funds. Since state funds are involved, the Attorney General says the State's interest is obvious.
"The question of the State's authority, through the Attorney General, to take legal action for or against one of its own departments or political subdivisions is well documented and discussed in the jurisprudence, particularly by the Supreme Court of this State. A brief review of these cases, especially where they relate to the right of the State through the Attorney General to legally determine the course of action to be taken by a department, should prove enlightening and possibly helpful in establishing some guidelines for resolution of the issue.
"The first important case bearing on the authority of the State versus one of its duly constituted political subdivisions is a 1910 case, State v. Tensas Delta Land Co., (Sup.Ct.) ([126 La. 59] 52 So. 216. The Attorney General sued in the name of the State to annul an alleged fraudulent sale of lands belonging to the Tensas Basin Levee District to the defendant Tensas Delta Land Co., a corporation organized by the levee district commissioners under the laws of Michigan, for a nominal consideration. The Attorney General also alleged that the defendant company had fraudulently sold its purchased lands to third persons. The Court held that while the levee board was an agency or instrumentality of the State, it also had a separate existence under the Constitution and statutes of the State. The Court said that so long as these laws remained effective, the levee board must be the one to regulate its property and to assert any rights it may have, and not the Attorney General of the State. (emphasis supplied by Court) The Court concluded with the following language:
`Again, it is true that if the governing body of one of these corporations fails in its duty to bring a suit which it clearly ought to bring, the courts may (only, however, under highly exceptional circumstances) allow any citizen or taxpayer of the district to bring the suit; and, in such a case, the same privilege might for the same reason be extended to the state; but nothing of that kind is pretended in this case. There is no suggestion that the board of commissioners of the district has failed to bring suit, or is unwilling to do so. In fact, this court knows the contrary from the public prints.' State v. Tensas Delta Land Co., 52 So. 216, 221.
The court held that the Attorney General had no interest in the litigation, by further noting that the people of the levee district, the real parties in interest, were protected by the Governor's power to change the membership of the levee board.
"In a later case, State v. Standard Oil Co. [164 La. 334], 113 So. 867 (Sup.Ct. 1927), the State sued Pure Oil Co. and Standard Oil Co. for the value of seven-eights of certain oil alleged to have been extracted from the dry bed of Ferry Lake in Caddo Parish. The State claimed to be owner of the land by virtue of the land's former status as the bed of a navigable body of water. The defendants had contended that the land had been placed under *210 the control of a levee board by legislative act. The court held that the levee board had the right to sue and be sued and that it alone must assert its rights of action. The court cited the Tensas Delta Land Co. case, supra, as authority for its position and quoted language therefrom. The controlling factor seemed to be the levee board's power to sue and be sued.
"Great emphasis is placed on the case of Saint v. Allen [172 La. 350], 134 So. 246 (Sup.Ct.1931), by the exceptors. In that case, the Highways Commission attempted to hire five attorneys as its own independent counsel. The Attorney General and the State sued to prevent the Highway Commission from so employing the attorneys, alleging that the Attorney General's office had charge of all legal matters of the State and that such employment was done without the approval of the Attorney General. The Attorney General relied heavily on LSA-Constitution Article VII, Section 56, previously quoted in this opinion. The Supreme Court held that the Highway Commission had the right to employ its own counsel without interference from the Attorney General. The Court cited the Tensas Delta Land Co. and Standard Oil Co. cases as authority for its position. In reaching its decision, the Court used the following language:
`Our conclusions therefore are that the Constitution, in defining the duties of the Attorney General and his assistants, confines those duties, by implication, to the state, as a distinct entity from its corporate agencies, and to the duties imposed upon those officials by law, and that the Louisiana highway commission is one of those agencies, and hence the duties and powers of the Attorney General and his assistants do not, by virtue of the Constitution, save as some of those duties may be prescribed by statute, attach to the commission.' Saint v. Allen, 134 So. 246, 249.
Chief Justice O'Neill dissented from this reasoning by saying that the Attorney General did have an interest in the Tensas Delta Land and Standard Oil Co. cases. What was held there, he said, was that the Attorney General should sue in the name of the state agency and not in the name of the State. His view was that the Attorney General was ex officio counsel for all state agencies and subdivisions, such power being implied from the nature of his office.
"Subsequently, in State v. Walmsley [181 La. 597], 160 So. 91 (Sup.Ct.1935), the Attorney General sued to prevent the sale of bonds and the collection of a property tax in the City of New Orleans pursuant to an alleged unconstitutional statute. The Supreme Court quoted extensively from the district judge's opinion who distinguished the holding of the Saint case. This was to the effect that the Attorney General has an interest in the legal matters of state agencies or subdivisions. Further quoting from 2 Ruling Case Law 913, 918, the district judge recited:
`"Obviously there can be no dispute as to the right of the Attorney General to represent the state in all litigation of a public character.
`"The Attorney General has authority to prosecute any action maintainable by the state.
`"In determining this question it should be noted that pecuniary interest on the part of the state is not decisive of the matter; for the obligation it is under to promote the interest of all and to prevent the wrongdoing of one resulting in injury to the general welfare, is often of itself sufficient to give it standing in court."'
The Supreme Court concluded from the above-quoted language and from affidavits submitted by the parties that the Attorney General had the power and authority to file the suit. But it is to be noted that the Court found the State had an actual interest in the matter since the full faith and credit of the State could be affected by a ruling on the bonds.
*211 "In State v. Smith, [182 La. 662], 162 So. 413 (Sup.Ct.1935), the Attorney General sued for preliminary and permanent injunctions to prevent nine elected members of the East Baton Rouge Parish Police Jury from interfering with orderly function of the police jury after thirteen additional police jurors had been appointed by the Governor to that same body. The Supreme Court held that the State had the right to restrain, by injunction, persons from interfering with her agents in the execution of the legislative will, citing State v. Fagan, 22 La.Ann. 545, as its authority. The Court further cited the Walmsley case, supra, as supporting the right and authority of the Attorney General to institute the proceeding.
"The Supreme Court in State v. Texas Co., [199 La. 846], 7 So.2d 161 (Sup.Ct. 1942), used the following language:
`The Attorney General has unquestionably the right to file a suit in the name of the State and he is not required to obtain the permission of the Governor or any other executive or administrative officer or board in order to exercise it. This power and duty is inherent in him in the nature of things and has been specially charged to him by the people themselves in the Constitution. Section 56 of Article VII of the Constitution of 1921, in prescribing the powers and duties of the Attorney General, declares:
"* * * They (the Attorney General and his Assistants), or one of them, shall attend to, and have charge of all legal matters in which the State has an interest, or to which the State is a party, with power and authority to institute and prosecute or to intervene in any and all suits or other proceedings, civil or criminal, as they may deem necessary for the assertion or protection of the rights and interests of the State. * * *" (Words in parenthesis and italics ours.)'
The Court did not rule, however, whether the State had a right or interest to bring suit in that case. It ruled that the exception of lack of authority of the Attorney General to proceed in the State's behalf was not the proper exception to raise the issue. An exception of no right or cause of action was cited as the correct exception to use. The Court therefore overruled the exception used and remanded the case to the district court. The State was attempting in that case to annul an instrument executed by the then late Governor Long which amended the description of a state lease.
"The case of Department of Highways v. Thomas, [200 La. 73], 7 So.2d 619 (Sup. Ct.1942), was a case where the Department and the Attorney General were joined as parties plaintiff to recover overcharges for crushed stone sold to the predecessor of the department, the Louisiana Highways Commission. The defendants excepted to the State's joinder as a party plaintiff. The Supreme Court held that since the Department was a proper plaintiff, the defendant's exception to the State's joinder was no reason to dismiss the suit. In arriving at this conclusion, the Court stated that the State was not a necessary party to the suit. Justice McCaleb concurred in the result of the case but stated that the State, through its Attorney General, had the paramount right of the sovereign to seek redress in the courts for money wrongfully obtained from the Highways Commission, an agency of the State.
"In State v. Doucet, [203 La. 743], 14 So.2d 622 (Sup.Ct.1943), the State, through the Attorney General, sued to recover money misappropriated from the Sheriff's Salary Fund of St. Landry Parish by former Sheriff Doucet. The Court held that the general rule was that the State is without authority to institute suit on a cause of action belonging to a political subdivision that possesses the right to sue and be sued. The Court proceeded to review language from the Tensas Delta Land, Walmsley, Smith and Standard Oil Co. cases, all of which were cited supra. The Court then used language very similar to that *212 cited in the opinion from the Tensas Delta Land case, as follows:
`Of course, if a political subdivision should neglect or refuse to institute suit and to assert its rights as beneficiary of a claim, which is not shown to exist in the instant controversey, an altogether different situation would arise. Respecting a matter of that nature, the following language from the Tensas Delta Land Company decision, supra, is appropriate: * * *'
State v. Doucet, 14 So.2d 622, 625.
The Court proceeded to quote the identical paragraph quoted earlier in this opinion from the Tensas Delta Land Co. case.
"While admittedly the language of these decisions is not in perfect harmony with one another, it appears the holdings of the cases do establish with some certainty the following rules to serve as a guide in this matter:
"1) The Attorney General of the State is the chief legal officer of the State with full power and authority to determine when and it litigation should be pursued on its behalf should the State have an interest;
"2) The Department of Highways, by virtue of the Constitution, is a distinct and separate legal entity apart from the State and by statute having the authority to sue and be sued;
"3) Except under extraordinary circumstances, a political subdivision of the State, should be the proper party to manage its legal affairs and institute litigation where it has an interest.
"Ultimately, it cannot be doubted but that the State is the sovereign over its various departments, whether or not they have been accorded separate legal status by the Constitution; however, the question is at what point may the State intervene and abrogate those actions of a department which seem to be improper, unlawful or contrary to established public policy.
"Applying the principles enunciated above, it would appear that under the usual circumstances where the Department of Highways contemplates litigation involving one of its particular functions, such as an expropriation suit, it has the exclusive privilege and right of making the determination of whether the matter may be disposed of by settlement or by suit. Otherwise, every settlement or compromise effected by it would be subject to countermand. While the Attorney General does not stringently disagree with this conclusion, he contends that once his office had indicated a disagreement with the proposed settlement, no further action should have been taken, and at that point his concurrence was required before an effective settlement could be concluded. In this position the Court disagrees. The Supreme Court has already held that the Department had a right to retain counsel other than the Attorney General. Saint v. Allen, supra. If it had the right to retain counsel, it likewise had the privilege of relying on the advise of its counsel. The Court will take judicial notice that lawyers often disagree. It appears therefore that the Board and the Department of Highways had the right to rely on its own counsel's recommendation as to the desirability of settlement instead of that of the Attorney General.
"But, essentially, the requirement that the Attorney General concur in matters of this sort is begging the real issue which is the right of the State to intervene in the affairs of one of its constitutional departments prior to the institution of suit. While the Attorney General alleges that the failure to invest public funds was a violation of statute and stated legislative policy, there is no assertion by him that the settlement itself *213 violated any public policy (except that it required his concurrence). Further while he alleges that there may have been some criminal activity connected with the original deposit of the funds, there is no complaint that the settlement itself was fraudulently contrived as invalid because of any criminal conspiracy. Finally, there is no claim by the Attorney General that either the Board or Department of Highways failed or neglected to take action in its behalf in connection with the recovery of the funds which may have been due it. The fact of the settlement itself rebuts any such assertion. Whether the Board and Department were wise in consummating the settlement is quite another thing. But obviously the Attorney General has no right to abrogate or annul actions of the Board or Department of Highways which do not seem to him to be well conceived.
"The Court, therefore, holds that where there is no allegation that a Department of the State, recognized as a separate legal entity, has willfully violated the public policy of the State and will take no action to correct such violation, or that whatever remedial action taken by it is fraught with fraud, then in this event, the State through the Attorney General has failed to state a cause or right of action against such Department." (Written Reasons for Judgment, Record, pp. 21-34)
The crux of plaintiff's argument on appeal is that by virtue of Article VII, Section 56 of the Louisiana Constitution of 1921, the Attorney General has exclusive authority over a legal matter such as is involved in the instant appeal, and once the Attorney General has made known his opposition to the proposed compromise, such opposition by the Attorney General necessitates judicial sanctioning thereof, even though no fraud or bad faith on the part of the state agency is alleged by the Attorney General. We do not agree with this contention and this interpretation of the aforementioned constitutional provision.
The Louisiana Supreme Court on frequent occasions has construed Article VII, Section 56, as not conferring an exclusive charge and control of all legal matters in which the state has an interest in favor of the Attorney General. In Kemp v. Stanley, 204 La. 110, 15 So.2d 1, 9 (1943), we find the following pronouncement by the Louisiana Supreme Court:
"* * * The latter part of the second sentence and the third sentence of Section 56 [of Article VII] show that the members of the Constitutional Convention did not intend to grant the Attorney-General and his assistants the complete and exclusive charge and control of all legal matters in which the State has an interest. If they intended that such exclusive, unlimited, and extensive power and authority should be conferred upon the Attorney-General and his assistants, they certainly would have used appropriate language to convey that meaning. * * *" (15 So.2d at 9)
Similarly, the Louisiana Supreme Court in Ricks v. Department of State Civil Service, 200 La. 341, 8 So.2d 49, 60 (1942), made the following statement pertaining to the scope of Article VII, Section 56:
"We do not construe Section 56 of Article VII of the Constitution to be exclusive in its nature or a limitation on the Legislature. From a mere reading of the constitutional provision, it is apparent that the framers of the Constitution never intended the provision to operate as a limitation upon the Legislature to prohibit it from passing any act, calling for the employment of counsel where it deemed such was necessary. However, if our opinion were otherwise, Saint v. Allen, 172 La. 350, 134 So. 246, would answer this contention." (8 So.2d at 60)
It has already been clearly established that the exceptors' predecessors had the *214 right to employ independent counsel, Saint v. Allen, 172 La. 350, 134 So. 246 (1931). If exceptors have the right to retain independent counsel, it necessarily follows that exceptors in general have the right to rely on reasonable advice and recommendations of such counsel. The mere fact that the Attorney General disagrees with such counsel does not in and of itself warrant an intervention and usurpation by the Attorney General. Just as the Attorney General could not render nugatory the role of a District Attorney in Kemp v. Stanley, cited supra, the Attorney General cannot render nugatory the role of exceptors' counsel herein, simply on the basis of the Attorney General's mere opposition to the transaction or compromise. We are of the opinion that the trial judge properly concluded that absent an allegation by the Attorney General that exceptors had willfully violated the public policy of the state or were acting fraudulently or in bad faith, plaintiff failed to state a cause of action and the peremptory exception was properly sustained.
Following the rendition of Written Reasons for Judgment, plaintiff tendered an amended petition to the trial court requesting that should the compromise be upheld, then the funds derived therefrom should be declared a collection and paid into the State Treasury pursuant to LSA-R.S. 39:131. The trial judge refused to sign the order requesting leave of the trial court to file the tendered amended petition. We find no abuse of the trial court's discretion in refusing to permit the amended petition to be filed at this stage of the proceedings, LSA-C.C.P. art. 1151. The amended petition would have introduced a new issue in the proceedings after the trial had been already completed and Written Reasons for Judgment rendered.
The judgment appealed from is affirmed.
Affirmed.