BRUNOT, Justice.
 

 This is a suit by the state, and by the Attorney' General, in his official capacity, he being charged with the duty of representing the state in all judicial proceedings in which the state has an interest, either as plaintiff, defendant, or intervener.
 

 It is alleged by the plaintiffs that Act No. 36 of the Second Extra Session of the Legislature, approved November 21, 1934, is unconstitutional, null, and void for the six reasons enumerated in article 13 of the petition; that if the provisions of said act are complied with, irreparable injury will be done to the state, the city of New Orleans, the
 
 *600
 
 property taxpayers of said city, and to certain of its bondholders; and that the several officers and boards mentioned in article 15 of the petition will comply with the provisions of said act, unless enjoined and restrained from so doing.
 

 After praying for citation and service of the petition upon the officers and boards named therein, the continuing verbiage of the prayer is in the following words:
 

 “That a rule issue herein commanding them and each of them to show cause on a date, not less than two nor more than ten days from service hereof, why a preliminary injunction should not issue herein without bond, restraining them and each of them from complying in any manner with the pro-' visions of Act No. 86 of the Extra Session of 1934, approved Nov. 21, 1934; that upon the trial of said rule there be judgment in favor of the State of Louisiana and your relator and petitioner, granting said preliminary injunction, and that upon final trial hereof, said Act No. 36 of 1934, approved November 21, 1934, be declared unconstitutional, null and void, and said injunction be made permanent and perpetual; that meantime a temporary restraining order issue herein, without bond, temporarily enjoining and restraining said defendants and each of them from complying in any manner with the provisions of Act No. 36 of the Extra Session of 1934, approved November 21, 1934. Relator and petitioner further pray for all orders necessary, for costs and general relief.”
 

 A rule nisi and a temporary restraining order issued, as prayed for, and the rule was made returnable on December 11, 1934.
 

 In a supplemental petition, relator and petitioner amended article 13 of the petition by adding thereto six additional reasons for challenging the constitutionality of Act No. 36 of the Second Extra Session of 1934, approved November 21, 1934.
 

 In response to the rule to show cause why a preliminary injunction should not issue, all of the defendants, except the Board of Commissioners of the Port of New Orleans, the Board of Commissioners of the Orleans Levee District, Louisiana State Board of Health, and Board of Control of the New Basin Canal and Shell Road, excepted to the original and supplemental petitions upon the ground that the state of Louisiana and the Attorney General have no interest in the matters alleged in the petition, or in the amendment thereof, nor capacity to stand in judgment in this suit, or to represent the taxpayers or bondholders affected by Act No. 36 of the Second Extra Session of 1934; and, therefore, the petitions disclose no right and no cause of action.
 

 These respondents also pleaded the.uneonstitutionality of Act No. 36 of the Second Extra Session of 1934. The four defendants named supra filed a joint return to the rule, from which we quote article 9 thereof:
 

 “Denied. And it is specially denied that the ordinances, the act of the Legislature No. 6 of 1899 Ex. Sess., and the amendment to the constitution embraced in Act No. 4 of 1899, constituted a contract with the State of Louisiana and the City of New Orleans and the taxpayers of said City, or a contract with the holders of said bonds, or that the terms and conditions under which said tax was voted preclude the Legislature from
 
 *602
 
 adopting Act No. 36 of the Second Extra Session of 1934, approved November 21, 1934. And further answering this article, it is alleged that:
 

 “1. The power of the Legislature to amend said Act No. 6 of 1899 as it has done by Act No. 36 approved November 21, 1934, is specially reserved to it, both in Act No. 6 of 1899 and in the amendment to the Constitution embraced in Act No. 4 of 1899, in article 313 of the Constitution of 1913, and in sections 22 and 23 of article 14 of the Constitution of 1921, and that the amendment embraced in said Act No. 36 will not have the effect of violating in any respect the conditions upon which said 2 mill tax was voted by the property taxpayers of the City of New Orleans, and will not have the effect of -impairing the vested rights or the contract rights of the holders of the bonds issued as alleged in the petition.
 

 “2. That the electors of the State of Louisiana, by constitutional amendments to the Constitution of the State of Louisiana, and by the ■ provisions of the Constitutions of the State of Louisiana of 1913 and 1921, including, of course, the electors of the City of New Orleans who are property taxpayers, have long since so changed, and altered the said conditions that the only right left in the taxpayer is the privilege of paying the said 2 mill tax annually as the same is assessed, which said actions have been accomplished by the electorate by the following provisions:
 

 “(a) Act No. 19 of 1906, a constitutional amendment adopted in November, 1906;
 

 “(b) Act No. 116 of 1908, a constitutional amendment adopted by the electors in November, 1908. .
 

 “(e) Article 315 of the Constitution of 1913, and section 23 of article 14 of the Constitution of 1921, ratifying and approving the provisions of said Acts Nos. 19 of 1906 and 116 of 1908.
 

 “(d) Act No. 3 of the Extra Session of 1927, an amendment to the Constitution of Louisiana, adopted November, 1927.
 

 “3. That, therefore, as all of said provisions stipulate for the disposition of the 2 mill property tax, in relation to the sewerage, water and drainage systems of the City of New Orleans, and, together with Act No. 6 of 1899 and the amendment to the Constitution embraced in Act No. 4 of 1899, provide how any funds reaching the Sewerage and Water Board shall be expended, it is no concern of the taxpayers and is not violative of any term or condition of the contract with them,- just how the Sewerage and Water Board shall be composed; an'd that therefore said Act No. 36 is a valid exercise of the Legislative power reserved to the Legislature, and vested in it without such reservation.”
 

 The issues thus presented were taken up in due course, whereupon the learned trial judge suggested to counsel that, if they consented thereto, he would try the case on the rule and on the merits and would decide all issues presented by the pleadings at one and the same time. Counsel for the board of liquidation of the city debt, the city of New Orleans, and the city board of health objected to a trial on the merits.
 

 The judge’s proposal to hear the whole case was doubtless prompted by the showing in the record that the Federal Emergency Administration of Public Works had allocat
 
 *604
 
 ed to the city of New Orleans $2,570,000, but said allocation had been suspended pending the final determination of this suit. In view of the emergent need of the sum allocated to the city of New Orleans, we also think that this ease should be finally decided on the merits as speedily as is consistent with the legal rights of all parties to this suit.
 

 The case was tried on the rule, the exceptions pleaded were overruled, the rule was perpetuated, and a preliminary injunction issued, as prayed for in the petition. All of the respondents appealed from the judgment. The appeals were brought up to this court in two transcripts, but they were consolidated and submitted together.
 

 We are of the opinion that Judge Byrnes correctly held that the state has a sufficient interest in the matters alleged in the petition to institute and prosecute this suit; and we quote, with approval, from the opinion of the learned judge, his reasons for so holding. After incorporating in his opinion excerpts from the brief of counsel for the board of liquidation of the city debt, the judge says:
 

 “In my opinion the word ‘private,’ before the word ‘interest,’ in the foregoing quotation, destroys the argument of counsel. The decision which he quotes from is not at all analogous to the suit before me. In that case no question whatever was raised as to the right of the Attorney General to represent the state if it had an interest, but the court held that in that particular case, which involved the payment of wages due to laborers, the state had no interest in that particular private litigation. A quotation of the entire excerpt which contained the quotation selected by counsel will, I believe, demonstrate this fact:
 

 “ ‘There was no personal liability whatever on the part of the state to these laborers, material men and sub-contractors, and as there was no lien upon the work the consequence follows that the state was without interest to file this suit, and that the exception of no cause of action should have been maintained and the suit dismissed. The state, no more than any other litigant, can maintain a suit without some pecuniary interest sought to be vindicated in the suit. The mere moral, or paternal, interest the state might have
 
 in any matter of PRIVATE INTEREST
 
 cannot serve as a basis for a cause of action.’ (Capitals and italicizing mine.) ‘Nor can any such paternalistic interest override a contractual obligation, binding upon the state in conscience and in law, just as a like obligation would be upon a private person, to make payment in the manner and form stipulated in the contract.’
 

 “This ease merely decided that the state cannot interfere in private litigation unless the state has a pecuniary interest to be vindicated therein. It is common sense. For example, no one would urge that if Robert Brown sued his wife for a separation from bed and board on the ground of cruelty, that the Attorney General would have a right to become a party to that suit on behalf of the state and champion the cause of either spouse.
 

 “In argument the case of Saint, Attorney General, v. Allen, 172 La. 350, 134 So. 246, was stressed by counsel for the defendant B.oard of Liquidation and by counsel for the City of New Orleans. I notice, however,
 
 *606
 
 that this particular case was not mentioned in the brief. The facts in this case were, as in the case of State v. C. S. Jackson & Co., 137 La. 931, 69 So. 751, entirely different and dissimilar to the facts before me in the case at bar. In the Saint Case the Attorney General contended that the highway commission had no right to employ counsel of its own selection, but that he, as Attorney General, under the constitution and laws of the state, had the sole right to represent the boards and agencies created by the state. In this case no question whatever was raised as to the Attorney General’s right to bring such a suit against the highway commission in order to have the matter in dispute litigated, and the sole question decided by the court was on the proposition whether or not the Attorney General alone had the right to represent state boards and agencies; and, contrary to the construction which counsel urged me to place upon this case, it is actually held by the Supreme Court that ‘Attorney General and assistants have charge of all legal matters in which state, as distinct entity, apart from other 'created entities or corporate agencies, has interest.’ (Constitution 1921, article 7, §§ 55, 56.)
 

 “It is true that the majority opinion of the court, written by the late and lamented Justice Overton, created some confusion and caused the writing of a dissenting opinion by the then and present Chief Justice O’Niell and also by Justice Odom, present associate justice of that court. The clause referred to is as follows:
 

 “ ‘It was not intended that the word “interest” used in this section should be received or interpreted in its broadest sense, in connection with the interest possessed by the State. (Constitution 1921, article 7, § 56.V
 

 “In justice to the distinguished jurist who wrote the opinion, it is necessary to finish the paragraph from which the above clause or sentence was taken, and it will be easily seen that all that he had in mind was to draw a distinction between the state as a distinct entity from its own boards and agencies, for he continues as follows:
 

 “ ‘Such an interpretation would make the accomplishment of the duties of the Attorney General and his assistants next to impossible, if not impossible. Therefore, so far as relates to the Constitution, that instrument, with reference to the duties of the Attorney General and his assistants, has confined, by implication, the duties, there demanded to be rendered, to those interests, possessed by the state, as distinct entity, and has left it to the legislature to impose such' other duties upon those officials as it may deem proper to do from time to time.’
 

 “In order however that no possible confusion could be created in our jurisprudence, Chief Justice O’Niell, in his dissenting opinion, on page 367 of 172 La., 134 So. 251, says:
 

 “ ‘The declaration in the prevailing opinion in this case that, “by implication,” section 56 of article 7 of the Constitution has confined the duties of the Attorney General and his assistants, “to be rendered to those interests possessed by the state as a distinct entity,” is indeed a novel proposition.
 

 “ ‘That section of the constitution declares that the Attorney General, or one of his assistants, “shall attend to, and have charge
 
 *608
 
 of all legal matters in which the state has an interest,” etc.
 

 “ ‘It is said in the prevailing opinion in this case that the word “interest” as here used is not to be interpreted in its broadest sense. The substance of the argument on that subject, in the prevailing opinion, is that the state has not an “interest” in the sense in which the word is used in section 56 of article 7 of the Constitution, in a case where a state hoard or commission is the plaintiff or defendant. I respectfully submit that it has never before been so considered, in this or any other jurisdiction in the United States. 2 R. C. L. 913; 6 C. J. 812, paragraph 18; State v. Finch, 128 Kan. 665, 280 P. 910, 911, 66 A. L. R. 13691
 

 “Thereafter, in his dissenting opinion, the Chief Justice reviews the Louisiana authorities to justify his statement as quoted above.
 

 “Ruling Case Law, Volume 2, page 918, says:
 

 “ ‘Obviously there can be no dispute as to the right of an Attorney General to represent the state in all litigation of a public character.
 

 “ ‘The Attorney General has authority to prosecute any action maintainable by the state.
 

 “ ‘In determining this question it should be noted that pecuniary interest on the part of the state is not decisive of the matter; for the obligation it is under to promote the interest of all and to prevent the wrongdoing of one resulting in injury to the general welfare, is often of itself sufficient to give it standing in court.’ State v. Zachritz, 166 Mo. 307, 65 S. W. 999, 89 Am. St. Rep. 711; State v. Pacific Express Co., 80 Neb. 823, 115 N. W. 619, 18 L. R. A. (N. S.) 664.
 

 “In the same discussion on the subject of the powers of the Attorney General, Ruling Case Law says:
 

 “ ‘It is generally acknowledged that the Attorney General is the proper party to determine the necessity and advisability of undertaking or prosecuting actions on the part of the state.’
 

 “Two affidavits have been filed in this suit, one by Mr. Alfred D. Danziger, a lawyer of high repute, in which he states facts which show that the State of Louisiana has an interest in this litigation. His affidavit is as follows:
 

 “‘State of Louisiana, Parish of Orleans
 

 “ ‘A. D. Danziger, being duly sworn, deposed and said:
 

 “ ‘that he is a qualified voter and taxpayer, residing and domiciled in the City of New Orleans, State of Louisiana:
 

 “ ‘That it has been alleged herein that the faith and credit of the State of Louisiana are affected as a result of the statute whose constitutionality has been challenged herein; that the ability of the State to market its bonds and obligations and those of its agencies, with agencies of the Federal Government such as the Public Works Administration and others, has been affected by said statute and others passed at the same session of the Legislature in 1934, as shown in announcements made by or emanating from the Administrator of Public Works in Washington, with specific reference to the Sewerage & Water Board of New Orleans and other public boards of this City and State; that
 
 *610
 
 not only are phases of public health involved herein, but also employment of thousands of citizens of New Orleans and the State of Louisiana hinges upon the speedy action of our Courts in passing upon the validity and constitutionality of said statute and others enacted in the same session; and that the interest of the City and State and the citizens thereof requires determination of these questions 'as matters of essential importance, with as little delay as possible.
 

 “ ‘[Signed] A. D. Danziger
 

 “ ‘Sworn to and subscribed before me, this 11th day of December, 1934.
 

 “ ‘[Signed] E. Jourdan, Dy. Clk.’
 

 “Counsel for the defendants, the Board of Liquidation, the City of New Orleans and the City Board of Health, obtained permission to secure affidavits, which I understood would support their contention that the litigation concerning the constitutionality vel non of Act No. 36 of the Second Extraordinary Session of 1934 was not the cause of the withholding by the government of the allotment of $2,570,000.00 made by the Federal Emergency Administration of Public Works for the Sewerage and Water Board of this city on November 14, 1934. A copy of the original affidavit which was secured by these gentlemen from Edward H. Foley, Jr., Director of the Legal Division of the Federal Emergency Administration of Public Works, Washington, D. C., was handed to me yesterday, Saturday, December 15, 1934, the original of which will be filed in the record on Monday morning, December 17th, 1934. Because, in my opinion, Mr. Foley’s affidavit substantiates, rather than contradicts, Mr. Danziger’s affidavit, I am copying it in full: “ ‘District of Columbia, City of Washington
 

 “ ‘Edward H. Foley, Jr., being duly sworn deposes and says:
 

 “ T am a member of the Bar of the State of New York and Director of the Legal Division of the Federal Emergency Administration of Public Works, Washington, D. C.
 

 “ ‘An allotment in the amount of $2,570,-000 by way of loan and grant has been made by the Federal Emergency Administration of Public Works to the City of New Orleans and a contract has been entered into between the United States of America and the City of New Orleans and the Board of Liquidation of the City Debt of New Orleans and the Sewerage and Water Board of New Orleans, dated November 14, 1934, pursuant to which the Government has agreed, subject to the terms and conditions contained in said contract, to aid in financing the construction of extensions and improvements to storm sewers and drainage, underground cable, sanitary sewer and water distribution facilities of said City.
 

 “ ‘By order of Harold L. Ickes, Federal Emergency Administrator of Public Works, advancement of all funds pursuant to said contract has been suspended until final disposition in a manner satisfactory to said Administrator of the litigation now pending in the Louisiana State and Federal Courts affecting the constitutionality of Act No. 36 of the Second Extra Session of 1934 of the Louisiana State Legislature, amending and re-enacting section- 8 of Act No. 6 of the Extra Session of the Legislature of 1899, approved August 18, 1899, establishing a Sewerage and Water Board for the City of New Orleans and defining, its powers, and until the legal division of the Federal Emergency
 
 *612
 
 Administration of Public Works has determined the scope and effect of Act No. 2 of the Second Extra Session of 1934 of the Louisiana State Legislature known as the “Debt Moratorium Act.”
 

 “ T do not consider that the faith and credit of the State of Louisiana are affected by said litigation nor are funds for projects of the State of Louisiana or of any of its Boards or Commissions being withheld by PWA because of the pendency of said litigation, but funds for projects of the State of Louisiana or any of its Boards or Commissions being withheld until the effect and scope of the “Debt Moratorium Act” are determined by said legal division and approved by said Administrator.
 

 “ ‘[Signed] Edward H. Foley, Jr.
 

 “ ‘Sworn to before me this 13th day of December, 1934.
 

 “ ‘[Signed] Nat Thompson, Notary Public.’
 

 “For the foregoing reasons, there is no doubt in my mind that the Attorney General possesses the power and authority to file this suit.”
 

 The plaintiffs and all of the defendants, except those who objected to the lower court hearing the case on the merits until their exceptions were finally disposed of, have argued to this court the existing emergency for an immediate decision of the issue involving the constitutionality vel non of Act No. 36 of the Second Extra Session of 1934, approved November 21, 1934. This is the sole issue in so far as the record before us discloses, that remains to be tried in the lower court, to which the case must be remanded.
 

 We, therefore, cannot anticipate what additional pleadings may be filed in that court, or what additional issues may be raised therein, preceding the trial on the merits, but we feel justified in saying, at this time, that on the record now before us, and with the case of State ex rel. Saunders v. Kohnke, 109 La. 838, 33 So. 793, in mind, no infringement of any provision of the Constitution of the United States is involved in this suit. We will also say that prior to the adoption of the Constitution of 1921, certain of the state’s police powers were delegated to the city of New Orleans and to various state boards. Conceding that the said powers could have been thus delegated by the State Constitution, it cannot be disputed that by subsequent amendments of its constitution, or by rewriting that instrument, those powers could be, and were, thus reinvested in the state. See State v. City of New Orleans, 151 La. 24, 91 So. 533. Hence it is our opinion that Act No. 36 of the Second Extra Session of 1934, approved November 21, 1934, is a mere legislative exercise of the police powers of the state.
 

 Upon the authority of State v. New Orleans Debenture Redemption Co. of Louisiana, 107 La. 562, 32 So. 102, the trial judge issued a preliminary injunction for the purpose of maintaining the status quo, pending a decision of the case on the merits. We see no error in the ruling.
 

 For the reasons assigned, the judgment appealed from is affirmed and the cause is remanded to division E of the civil district court for a trial on the merits, all costs, etc., if any, to await the final decision of the case.
 

 O’NIELL, O. J., concurs in the decree and hands down reason.
 

 
 *614
 
 ROGERS, J., concurs in the decree for the reasons set forth in the concurring opinion of the CHIEF JUSTICE.
 

 ODOM, J., concurs in decree.
 

 HIGGINS, J., concurs in decree and hands down written reasons.