HIGGINS, Justice.
 

 Relators, the Governor and the Attorney General of the state of Louisiana, the police jury of the parish of East Baton Rouge, and thirteen persons who allege that they are members of the police jury of the parish of East Baton Rouge, under appointments by the Governor of this state, in accordance with the provisions of Act 22 of the Third Extraordinary Session of the Legislature of the state of Louisiana of 1934, obtained a temporary restraining order from the district judge, enjoining nine other members of the police jury of the parish of East Baton Rouge, the sheriff of that parish, and his deputies, the district and assistant district attorneys of the Nineteenth Judicial District, the legal advisers of the police jury, and the treasurer-clerk of that body, who is said to have been appointed to that office by nine defendant members, or a minority, of the police jury, from interfering with the lawful and orderly functioning of the police jury and the alleged majority members thereof.
 

 On the rule nisi, the district judge, in a written opinion, refused to grant a writ of preliminary injunction to the relators on the ground that their joint petition failed to allege a right or cause of action, and recalled the rule nisi and the temporary restraining order.
 

 
 *667
 
 Relators then applied to this court for writs of certiorari, prohibition, and mandamus. We granted the writ of certiorari and made it returnable on April 15, 1935, and ordered the respondents, at the same time, to show cause why the writs of prohibition and mandamus and the relief sought by relators should not be granted.
 

 In response to the rule, the trial judge filed a written return and the record in the case, and respondents also made a joint written return.
 

 Plaintiffs, in their petition for the writ of injunction, alleged that the Governor of the state appeared by virtue of the mandate contained in section 14 of article 5 of the Constitution of 1921, requiring him, as chief executive of the state, to have the laws faithfully executed and obeyed; that the state of Louisiana appeared through its Attorney General, who is authorized under section 56 of article 7 of the Constitution of 1921, to represent the state herein; that the state is interested because it has a proprietary and pecuniary interest in the administration of the fisc of the parish of East Baton Rouge, a political subdivision of the state, to which body the state has delegated certain police powers and other powers of the state within the parish, and is further interested in maintaining order and having its laws executed and obeyed; that the police jury of the parish of East Baton Rouge appeared by virtue of its resolution adopted at a meeting held on January 24, 1935, a certified copy of which is annexed to and made part of the petition; that the thirteen individual petitioners appeared as duly appointed, qualified, and acting members of the police jury of the parish of East Baton Rouge, having been appointed and commissioned by the Governor, under the provisions of Act No. 22 of the Legislature of the Third Extraordinary Session of 1934, and qualified by taking their oaths and possession of their offices and performing their duties as such, for the respective wards of the parish that they represent; that the thirteen appointed police jurors, together with four previously elected members of the police jury, being seventeen in number, constituted a majority of the twenty-six elected and appointed members thereof; that they met at a special meeting ón January 24, 1935, at 10-o’clock a. m., and adopted certain resolutions and ordinances, reorganizing the police jury, certified'copies of which resolutions, ordinances, and minutes of the meeting are attached to and made part of the petition. These documents show that the-meeting was called in accordance with section 2731 of the Revised Statutes, after due-notice to the nine elected or minority members of the police jury; that the defendant Matt G. Smith was removed as president of the police jury, and plaintiff Dr. Clarence A. Lorio elected and installed in his stead; that the offices of clerk of the police jury and parish-treasurer were combined into one office, removing Mrs. C. M. Bomar from the former office and L. P. Amiss from the latter office, and then electing Mr. Amiss as the clerk-treasurer; that
 
 *669
 
 Mr. Amiss immediately took his oath and gave bond as required by law and then took physical possession of his office, excepting books, records, and accounts of the police jury that had been sequestered in another case, and invoices of accounts payable by the police jury that were in the possession of Mrs. Bomar; that the finance committee was abolished and a new one appointed in its stead; that other committees were abolished and new committees created; that the funds of the parish should be budgeted and paid out by warrant, voucher, or check signed by the chairman of the finance committee and by the treasurer-clerk; that the employees of the police jury were dismissed, and the newly elected president authorized to appoint others; that E. L. McGee was appointed as custodian of the courthouse; that only the salaries of deputy sheriffs appointed in accordance with the provisions of section 3542 of the Revised Statutes, as amended by Act No. 27 of the Third Extra Session of 1934 should be paid out of the parish treasury; that the sheriff and his deputies were relieved of any duties in connection with the custody of the courthouse and the records of the police jury; that the Attorney General and his assistants were appointed to act as counsel for the police jury, the district attorney and his assistant being recused for having previously, in a letter to the nine elected or minority members of the police jury, expressed the opinion that Act No. 22 of the Third Extraordinary Session of 1934 was unconstitutional, and .that the elected police jurors should refuse to recognize the newly appointed police jurors and prevent them from qualifying and taking their office.
 

 Petitioners also alleged that the said nine or minority members met in a special meeting at 2 o’clock p. m., January 24, 1935, or after the above referred to meeting, and passed certain resolutions, certified copies of which, and the minutes of the meeting, are annexed to and made a part of the petition. These resolutions and the minutes of the meeting show that, based upon the written opinion of the district attorney to the effect that the statute under which the plaintiffs were appointed as police jurors was unconstitutional, the nine elected police jurors considered that the Governor had illegally appointed the thirteen members of the police jury and that by qualifying they had illegally intruded themselves into office; that, as elected police jurors, it was their duty to protect and maintain the right of local self-government to the people of their parish against such unlawful intrusions ; that the district attorney, as their legal adviser, was instructed and directed to bring appropriate action in the courts to have the appointment of these thirteen members declared illegal, null, and void, and to have them ousted from office, and to take such further and other legal action as may be necessary in the premises; that the thirteen appointed members, at a special meeting held this day, intruded
 
 *671
 
 themselves into office and have appointed L. P. Amiss treasurer-clerk, and that he has accepted the appointment, thereby vacating the office of treasurer of the police jury for the parish of East Baton Rouge; that under the provisions of Act No. 122 of 1924, the office of treasurer and clerk was consolidated and Mrs. C. M. Bomar was appointed to that position; that Matt G. Smith (president) one of the defendants, was authorized and directed to notify the fiscal agents and depositories of the police jury not to honor any checks of the police jury unless they were signed by the president, Matt G. Smith; that E. L. McGee be notified at once that he was dismissed as an employee of the police jury and his authority in connection with the courthouse building and grounds was revoked ; and that the sheriff be notified that he was in full charge of the courthouse building and grounds.
 

 The petition further alleges that the resolutions adopted by the minority members of the police jury were illegal, null, and void, because there was less than a quorum of the police jurors present when they were adopted, and because they were not adopted viva voce, as required by section 7 of article 8 of the Constitution of 1921; that on January 8, 1935, at a regular meeting of the police jury, a resolution was adopted, certified copies of which, together with the minutes of the meeting, were annexed to and made a part of the petition. These exhibits show that the meeting was attended by twelve of the thirteen elected police jurors who, by a vote of ten to two, adopted the resolution; that the resolution shows
 
 “a so-called law was passed/’
 
 at the recent extra session of the state Legislature, although vigorously opposed by their representatives; that the law authorized the Governor to appoint thirteen additional members of the police jury for the parish of East Baton Rouge; that, if the additionally appointed members are seated, the duly elected members of the police jury will lose control and conduct of the affairs of the parish; that their legal adviser, the district attorney, informed them that the statute authorizing the appointment of the additional members was unconstitutional, and the elected members were within their legal rights in refusing to seat such appointees; that they would be unfaithful to their responsibility as elected police jurors were they to relinquish control of the parish government; that they believe the great majority of citizens would agree with them in their determination to retain control of their affairs ; that they v should refuse to recognize and seat the appointed members; that the employees were instructed to refuse to turn over the office, books, and records, or moneys in their possession to any such appointees or their representatives; that full custody of the courthouse and grounds were placed in the hands of the sheriff for the parish; and “that we called upon the sheriff to lend the aid and support of his office to effectively carry out the provisions of this resolution.”
 

 
 *673
 
 Plaintiffs further allege that, as a result of the unlawful action of the said minority members under the resolutions of January 8, 1935, and January 24, 1935, the said nine named elected members of the police jury, and the sheriff of the parish of East Baton Rouge, and his deputies, thé district attorney and assistant district attorney of the Nineteenth Judicial District have interfered with the proper and lawful functioning of the police jury of the parish of East Baton Rouge and the petitioners representing the majority members thereof, are continuing to interfere, and, unless enjoined, will continue to further interfere, contrary to the laws of this state and the resolutions and ordinances of the police jury; that such unlawful interference has caused immediate and irreparable loss, injury, and damage to the state of Louisiana, the parish of East Baton Rouge and its police jury and the majority, members thereof, and if continued will cause additional irreparable loss, injury, and damage to the state, the parish, police jury, and petitioners, members of the police jury.
 

 Plaintiffs prayed that a temporary restraining order and preliminary writ of injunction issue, restraining and enjoining the defendants from interfering with the lawful and orderly functioning of the police jury of the parish of East Baton Rouge and the majority members thereof, or with the treasurer-clerk, appointed by them, or with the execution of the laws in respect to the police jury or the majority members thereof, or with its lawful ordinances and resolutions, and, after due trial, that the preliminary writ of injunction be made permanent, perpetual, and final.
 

 The defendants jointly filed an exception on the ground that the plaintiffs did not have “any interest, right or standing to join in, become a party to,' or prosecute this suit, or to stand in judgment herein.”
 

 Defendants also jointly filed another exception and a return to the rule to show cause on the grounds: (1) “That said petition alleges no facts entitling the plaintiffs, or any of them, to injunctive relief.” (2) “That said petition sets up no right or cause of action against these defendants, or any of them.”
 

 Four of the elected police jurors who attended the special meeting with the thirteen appointed police jurors on January 24, 1935, intervened and attacked the constitutionality of Act No. 22 of the Third Extraordinary Session of the Legislature of 1934 on the identical grounds urged by the district attorney as his reasons for ' advising the police jury that the statute in his opinion was unconstitutional.
 

 The plaintiffs answered the petition of intervention, admitting that the four interveners were elected and qualified members of the police jury of East Baton Rouge, and had an interest in the outcome of the litigation, but denied that the statute was unconstitutional.
 

 Defendants then filed a motion to strike out the petition of intervention on. the grounds that the interveners must take the
 
 *675
 
 suit in which they intervened as they find it, and cannot change the issues between the parties, plaintiffs and defendants, and cannot raise new issues, and that
 
 as defendants “have not, up to this time, attacked the constitutionality of Act No. 22 of the Third Extraordinary Session of the Legislature of Louisiana of 1934,” interveners cannot substitute themselves for the defendants, zvithout their consent, and make such a defense. Defendants, however, reserved the right to attack the constitutionality of the act.
 
 (Italics ours.)
 

 Defendants also filed a plea of estoppel to the petition of intervention on the ground that the four interveners, as elected members of the police jury, had waived their right to attack the constitutionality of the statute, because they had met with the thirteen appointed police jurors; plaintiffs in this suit, who, without the benefit of the act of the Legislature in question, could not possibly claim to hold the
 
 offices which they intruded into;
 
 that the said four elected members had joined with the thirteen appointed members in an attempt to reorganize the police jury in the several respects heretofore enumerated, and therefore, having claimed the benefits of, and having asserted rights under the purported statute, they cannot now question its constitutionality; that the interveners did not file their petition in good faith, but for the purpose of embarrassing the defendants to their injury and detriment in their defense to this suit; and-that
 
 “appearers specially reserve the right to attack the constitutionality of the said Act No. 22 of the Third Extraordinary Session of the Legislature of Louisiana of 1934, in this suit, whenever in their uncontrolled discretion it seems desirable and proper to protect their rights in the premises.”
 
 (Italics ours.)
 

 Three other parties claiming to be residents, citizens, and taxpayers of the city of Baton Rouge, and, as such, interested in the outcome of the suit, also intervened and pleaded estoppel to the petition of intervention of the four elected members of the police jury on practically the same grounds urged by the defendants in their plea of estoppel.
 

 On the trial of the rule, it was admitted that more than $3,000, exclusive of interest and cost, was involved in this litigation; that the thirteen individuals, who are plaintiffs in the suit, and who claimed to be members of the police jury for the parish of East Baton Rouge, were commissioned by the Governor of the state of Louisiana, under the provisions of Act No. 22 of the Third Extraordinary Session of the Legislature of the state of Louisiana of 1934, and, as such, took their oaths of office on January 23, 1935, which were duly filed on that date with the clerk of the district court; that L. P. Amiss qualified for the position of treasurer-clerk, to which he was appointed, by filing a bond and his oath of office with the clerk of the district court, on January 24, 1935, at 1:49 o’clock p. m. These admissions were made with regard to the rem ipsam, but without prejudice to the rights of the defendants
 
 *677
 
 to attack the legality and validity of the appointments and all proceedings thereunder.
 

 Plaintiffs filed in evidence the certified copies of the resolutions, ordinances, and minutes of the regular meeting of the police jury of January 8, 1935, and of the special meeting of the thirteen appointed members and four elected members on January 10, 1935, and of the special meeting of the nine elected members held on January 24, 1935, at 2 o’clock p. m.
 

 The trial judge took the case under advisement and rendered an opinion sustaining the exception of no cause of action on the ground that plaintiffs failed to allege sufficient facts to show continued interference by the defendants.
 

 The Legislature of Louisiana, at its Third Extraordinary Session of 1934, enacted Act No. 22, approved December 22, 1934, entitled “An Act Relative to the police juries of the State; authorizing the election and appointment of police jurors in all of the parishes of this State, the Parish of Orleans excepted; and repealing all laws in conflict herewith.”
 

 It appears that section 1 of the statute is a re-enactment of section 1 of Act No. 161 of 1894, which provided for the election of, at the general state election every four years, as many police jurors for each ward of every parish in this state as provided by law, the parish of Orleans excepted. A proviso was added to section 1, reading as follows:
 

 “Provided, however, that in the parish in which the State capital is situated there shall be appointed by the Governor, by and with the advice and consent of the Senate, to serve for terms of 4 years, as many additional members of the police jury as there are members elected. The members of the police jury of the parish in which the State capital is situated to be appointed under this Act shall be appointed by the Governor after this Act takes effect, and their terms shall expire with the term of the Governor appointing them.”
 

 Section 2 of Act No. 22 is a re-enactment of Act No. 94 of 1884, as amended by section 1 of Act No. 196 of 1906, relative to additional police jurors in parishes of 50,-000 or more inhabitants.
 

 Section 3 of the statute is a mere reenactment of Act No. 279 of 1908, relative to additional police jurors in parishes of less than 50,000 inhabitants. There was a slight change in phraseology between the two acts which is immaterial here.
 

 Section 4 of Act No. 22 repealed all laws or parts of laws in conflict therewith.
 

 The first question presented is whether or not the plaintiffs have any right or interest to institute this suit.
 

 It appears to us that the state is not only interested from the viewpoint of the orderly enforcement, respect, and obedience to its laws, but is also interested in a pecuniary way in this suit. Section 15 of Act No. 140 of 1916, as amended by
 
 *679
 
 Act No. 211 of 1918, § 4, provides that the police jury shall sit as a board of reviewers on the assessment of property for state purposes, excepting only public service corporation property, such as railroads, etc., which property is valued by the Louisiana Tax Commission, which has jurisdiction over public service corporation property. Consequently, the state has an actual and direct pecuniary interest in having the police jury constituted in accordance with the provisions of the laws of this state, so as to legally sit as a board of reviewers, because such action by the police jury affects the taxes of the state.
 

 Since the state has an interest in this suit, the Attorney General has a right to assert it. Article 7, § 56 of the Constitution of 1921.
 

 In the case of State of Louisiana ex rel. S. Belden, Attorney General, v. Wm. Fagan et al., 22 La. Ann. 545, the Attorney General, in the name of the state of Louisiana, instituted a suit for the purpose of obtaining an injunction to prevent the Live Stock Dealers’ & Butchers’ Association of N. O. from executing any of the acts and purposes for which the corporation was organized, because such acts and purposes were prohibited by the statute of Louisiana. The court held, 22 La. Ann. 545, at page 547:
 

 "The State has the right to restrain, by injunction,
 
 persons (who have joined themselves together for the avowed purpose of doing what is prohibited by law), from carrying into effect their unlawful purposes,
 
 and from interfering with her agents in the execution
 
 of the legislative will.” (Italics ours.)
 

 In the recent case of State ex rel. Gas-ton Porterie, Attorney-General v. T. Semines Walmsley, Mayor, et al., 181 La. 597, 160 So. 91; we had occasion to consider this subject-matter, and held that under article 7, section 56 of the Constitution of 1921, the Attorney General and his assistants were authorized to attend to all legal matters in which the state had an interest, with power to institute civil suits, or intervene therein, as they may deem necessary for the purpose of asserting or protecting
 
 "the rights and interests of the State.”
 
 It is clear, therefore, that the state and the Attorney General had the right and authority to institute this proceeding.
 

 Has the Governor any interest in this matter?
 

 Section 14 of article 5 of the Constitution reads:
 

 “He [the governor] shall take care that the laws be faithfully executed. * * * ” (Brackets ours.)
 

 The Governor, by virtue of the authority vested in him under the provisions of Act No. 22 of the Third Extraordinary Session of the Legislature of 1934, appointed thirteen of the plaintiffs as. police jurors for the parish of East Baton Rouge. Before they could qualify, and after they had qualified and took office and attempted to function, together with four elected members, the defendants, by written resolutions and
 
 *681
 
 opinions, challenged the right and authority of the Governor to make these appointments on the ground that the statute under which he acted was unconstitutional. Defendants, however, have not, in this proceeding, pleaded the unconstitutionality of the statute.
 

 In the case of State ex rel. Gaston L. Porterie et al. v. W. Carruth Jones, Judge, etc., 181 La. 390, 159 So. 594, 597, we said:
 

 “Legislative acts are entitled to great respect, and are presumed to be constitutional. To destroy this presumption, they must be shown manifestly to violate the organic law. New Orleans v. Robira, 42 La. Ann. 1098, 8 So. 402, 11 L. R. A. 141; State v. [Rose] Ross, 125 La. 462, 51 So. 496, 26 L. R. A. (N. S.) .821; Duffy v. New Orleans, 49 La. Ann. 114, 21 So. 179; State v. Capdevielle, 104 La. 561, 29 So. 215. Until an act of the Legislature is declared unconstitutional by the final decisions of the courts, its provisions must be respected and obeyed.”
 

 See, also, 8 Cyc. 803, verbo: Constitutional Law; O’Gorman & Young v. Hartford Insurance Co., 282 U. S. 251, 257, 51 S. Ct. 130, 75 L. Ed. 324, 72 A. L. R. 1163; Sinking Fund Cases, 99 U. S. 727, 25 L. Ed. 504; Toombs v. Citizens’ Bank, 281 U. S. 643, 647, 50 S. Ct. 434, 74 L. Ed. 1088.
 

 In the case of State ex rel. Nicholls, Governor, et al. v. Shakespeare, Mayor, et al. of City of New Orleans, 41 La. Ann. 156, 6 So. 592, it was held that the Governor has the right to enforce compliance with a law through a writ of mandamus. In 41 La. Ann. 156, on page 166, 6 So. 592, 596, the court said:
 

 “A government whose laws can be ignored by those whose duty it is to execute them is feeble, weak, and inert, and is wanting in that vigor, strength, and energy that will insure its perpetuity. The mayor and council of the city of New Orleans are the officers of a subordinate political corporation, not only charged with municipal duties, but as a constituent part of the state government they owe allegiance and obedience to their sovereign, the state of Louisiana, whose majesty, dignity, and power they must uphold, and whose mandates they must obey. They cannot defy the law, constitute themselves the judges of its constitutionality, and pronounce upon its validity, when they are charged with its execution, in advance of the judicial tribunal whose sole prerogative it .is to pass upon its constitutionality. It is their duty to obey the law until the law has been declared null and void by the judicial department of the government.
 

 “The presumption is always in favor of the constitutionality of the law to that extent that the case must be so clear that no reasonable doubt can exist as to its constitutionality.”
 

 A parish' is likewise a political subdivision created by the state and the above rea-., soning is equally applicable thereto.
 

 In the case of Genois, Mayor, v. Lockett, 13 La. 545, the city council passed an or
 
 *683
 
 dinance allowing an attorney’s fee of $2,-500 to one of its members, and directed the mayor to sign a note for that sum. He refused, and the council then passed an ordinance authorizing another functionary to sign all notes of the city. The designated official signed the note in question, and the mayor sought an injunction, which was refused by the lower court, which sustained certain exceptions. In reversing the judgment of the lower court and remanding the case, the Supreme Court, in 13 La. 545, at page-548 said:
 

 “Entrusted as he is, for the common benefit of all the corporators, with power to see the charter faithfully executed, he must, in the exercise of that power, have frequent recourse to courts of justice, and has the right to test there the legality of ordinances passed by
 
 any
 
 of the councils, when a proper case occurs. We cannot prescribe to him the course which he is to pursue in the discharge of his official duties. The power to see the charter faithfully executed, being given to him the selection of the means necessary to its exercise 'is left to his discretion, and we cannot interfere with them if they violate no law.”
 

 In the case of State ex rel. v. Dowling, 158 La. 706, at page 711, 104 So. 624, 626, we said:
 

 “It is made the duty of the Governor to see that the laws are properly and faithfully executed,
 
 and to this end he is authorized to require information from the various officers in the executive department upon any subject relating to the duties of their respective offices. Sections 13 and 14, art. 5, Constitution 1921.
 

 “If, as contended by the relator, it is the mandatory duty of the defendant officer to appoint a parish board of health for the parish of Orleans, and if the failure to perform that duty injuriously affects the interest of the public or of the people of the parish of Orleans, the duty of making the appointment must be enforced, if at all, by the Governor through the proper legal department of the state, and not at the suit of an individual citizen. * * *
 

 “Our conclusion is that, if it is the duty of the defendant to appoint a health board for the parish of Orleans, the enforcement of the performance of that duty devolves upon the proper officers of the state. * * *
 
 »
 

 See, also, Dubos v. Dreyfous, 52 La. Ann. 1117, 27 So. 663.
 

 Since the Governor has the right by a writ of mandamus to enforce the observance of the provisions of a legislative act, he, likewise, has the right to enforce the provisions of a statute through injunction proceedings by preventing persons, and particularly those charged with the enforcement of the law, from interfering with those authorized by the statute to carry out its provisions, and especially when those disobeying and refusing to follow the provisions of the statute are doing so without questioning its constitutionality in a proper proceeding in a court of competent jurisdiction. This is particularly
 
 *685
 
 true where the actions of a group of citizens, who refuse to recognize the validity of the law, are conducive and suggestive of public disorder on a large and serious scale.
 

 It is our opinion that the Governor is a proper party plaintiff.
 

 We shall next consider whether or not the police jury of the parish of East Baton Rouge has any right and interest in bringing this action.
 

 Police juries are political corporations to which the sovereign state has delegated a limited portion of its governmental or police powers. Their rights and powers are defined by the Legislature and exist only to the extent delegated to them by positive legislation. American Ice Co. v. Police Jury, Parish of Jefferson, 162 La. 614, at page 619, 110 So. 878, 879, and the cases therein cited; Union Sulphur Co. v. Calcasieu, 153 La. 857, 96 So. 787.
 

 Since the constitutionality of the statute under discussion has not been questioned by the defendants in this judicil proceeding, the police jury of the parish of East Baton Rouge, in the eyes of the law, is now composed of thirteen elected and thirteen appointed members. It therefore takes not less than fourteen members to constitute a quorum, in order for the police jury to legally and properly function as a body. Police Jury of Ouachita Parish v. Monroe, 38 La. Ann. 630.
 

 At the meeting held on January 24, 1935, at 10 o’clock a. m., there were seventeen members of the police jury present. They unanimously passed a resolution authorizing the Attorney General and his assistants to institute and defend all proceedings in the courts of this state, to maintain the rights and the interest of the police jury, recusing the district attorney, their regular legal adviser, because he had advised the minority members of the jury not to recognize the thirteen appointed members and to decline to allow them to take their seats, because the act under which they were appointed was unconstitutional. It appears that under the law and the circumstances, the police jury had the right to pass such a resolution. • However, if it be said that under the provisions of Act No. 125 of 1912, as amended by Act No. 221 of 1920, the approval of the Governor and the Attorney General was necessary, their approval is sufficiently expressed and manifested by their joining the jury as plaintiffs herein. The law is clear that the police jury has a right to sue and stand in judgment. Police Jury of La Salle -Parish v. Police Jury of Catahoula Parish, 145 La. 1053, 83 So. 250. It thus appears to us that the police jury has a right and interest in this suit and is properly before the court.
 

 Have the thirteen appointed members any right or interest as plaintiffs in this case? Their right and authority to serve as members of the police jury of the parish of East Baton Rouge is questioned by the defendants, collectively, on the ground that the legislative act under which
 
 *687
 
 they were appointed is unconstitutional, without any attempt on the defendants’ part up to the present time to put that question at issue in this proceeding. The sole complaint against them exercising the functions of their office is that in the defendants’ opinions the act under which they were appointed is unconstitutional. The defendants are entitled to their views and conclusions as to the validity of this act, but the only way in which they can legally interpose their opinions between the plaintiffs and the discharge of their duties as members of the police jury is by having that issue presented for judicial consideration and determined in their favor. The individual and collective opinions of the several members of the police jury and the district attorney and his assistant that the statute is unconstitutional does not destroy the presumption of constitutionality of the act.
 

 In the case of State v. Judge, 48 La. Ann. 1501, 21 So. 94, the relators had been appointed^ and commissioned by the Governor of this state under the provisions of Act No. 94 of 1884, as three additional or new police jurors of St. Landry parish. The statute did not abolish any of the offices of the police jurors or confer upon the Governor the right to remove any of the. members, but simply created three new offices and authorized the Governor to make the necessary appointments, to fill the same. The district attorney questioned the legality of the appointments and obtained an injunction from the district judge, restraining the appointees from taking their offices. In reversing the decision of the district court, the Supreme Court, 48 La. Ann. pages 1515 and 1516, 21 So. 94, 100, said:
 

 “The question at issue is the power of the judiciary to • summarily. and positively check, by injunction, the exercise of the powers of the executive department. A more important question than this can scarcely arise. * * *
 

 “The power of the governor having been exercised, so relators’ petition declares (and the fact is not denied), under an official opinion delivered by the attorney general, the highest law officer in the state in the prosecution of the interests of the state.' It is the bounden duty of the judiciary to give some force and effect to the acts of the executive. His acts are not to be presumed illegal and utterly wrong upon a mere conclusion of law announced by a district attorney. The parties enjoined in this case had not gone into office under their commissions; they had not usurped any office; but,.before they had taken any steps whatever, they were ordered and forced (as we have said), as plaintiffs, to primarily vindicate their rights, and the authority of the executive in a new suit. The district judge reversed the'presumptions as to the validity of the governor’s action, and threw the judiciary department into immediate and direct clash with the executive department. * * *
 

 “All that we decide now is that the district court was without power or authority
 
 *689
 
 by injunction to tie up the relators in the exercise of their functions of their office, by anticipation, and to force those parties to remain powerless to act until, as plaintiffs, they had first affirmatively shown the .authority of the governor to make the appointments. See, on this subject, State ex rel. Cheevers v. Duffel, 32 La. Ann. [649] 653.”
 

 Act No. 22 does not abolish any of the offices of the police jurors of East Baton Rouge, but creates thirteen new and additional offices, which the Governor is authorized to fill.
 

 In the instant case there is no contest over the title to office. The police jurors are not claiming one another’s offices. This is neither an intrusion into office nor quo warranto proceeding. The two contending groups held their respective offices as members of the police jury independently of each other. The whole difficulty results from the alleged minority members of the police jury ignoring the thirteen appointed members on the ground that they were illegally appointed and allegedly interfering with the plaintiffs in the performance of their duties as members of the police jury.
 

 Plaintiffs show that they have duly qualified and are in possession of their new offices, and allege that the defendants are interfering with them in the discharge of their duties.
 

 In the case of Guillotte v. Poincy, 41 La. Ann. 333, 6 So. 507, 5 L. R. A. 403, it was held that a de facto officer in possession of his office was entitled to an injunction to protect him against interference by claimants whose title to the office is disputed, until the latter shall establish title to the office by judicial proceedings, according to law. State v. Judge, 42 La. Ann. 1172, 8 So. 883; Goldman v. Gillespie, 43 La. Ann. 83, 8 So. 880; Jackson v. Powell, 119 La. 882, 44 So. 689; State v. Turner, 152 La. 828, 94 So. 411.
 

 While those cases are not directly in point here, because there is no dispute as to titles to the same offices by different claimants, it follows as a corollary from those authorities that officers are entitled by injunction process to maintain themselves in peaceful possession of their new office against unlawful interference, until the invalidity of their appointment has been declared in a judicial proceeding. This is particularly true where the constitutionality of the statute authorizing their appointments is only questioned out of, but not in, court.
 

 It is our opinion that the thirteen appointed members of the police jury had an interest and right to bring this proceeding to protect them against interference in the enjoyment of their offices.
 

 The next issue is whether or not the plaintiffs’ petition alleges sufficient facts to show that the defendants are unlawfully interfering with the plaintiffs as members of the police jury in carrying out the duties and functions of their offices.
 

 
 *691
 
 From the petition and exhibits, which are annexed thereto and made part thereof, and consisting of the resolutions, ordinances, and minutes of the meetings held by the plaintiffs and the defendants on January 8, 1935, and January 24, 1935, respectively, and hereinabove fully recited, it appears that the defendants were opposed to the passage by the Legislature of the bill which subsequently became Act No. 22, approved December 22, 1934. After the statute became effective as a law, defendants, acting concertedly, took such action, out of court, that they felt would effectively bar and prevent the enforcement of the statute, without resorting to court to have its constitutionality determined, although they had authorized the district attorney to institute proper proceedings for that purpose. The defendants have undertaken out of court to set aside everything that the thirteen appointed and four elected police jurors had done through resolutions and ordinances on January 24, 1935. By setting up their opinions to the effect that the statute is unconstitutional, in opposition to that of the members of the Legislature, the Governor, as the chief executive of the state, and the Attorney General (who were of the opinion that the statute was constitutional), they have attempted and are continuing in their efforts to set at nought the legislative will and the appointments by the Governor. They have passed resolutions, the effect of which is to repeal the legislative act and rescind the Governor’s appointments and commissions. They have sought to destroy the presumption of constitutionality of the act by creating in the public mind, and particularly in the minds of those who might have business with the police jury, doubt, skepticism, and fear, that any action taken by the new members of the police jury would be unlawful, leading inexorably' to the stagnation and the demoralization of the business of the parish of East Baton Rouge.' It is obvious that, as a consequence of this confusion, the assessor of the parish would not know with whom to file the assessment rolls for the year 1934, upon which the finances for the operation of the school board, the road districts, etc., depend. Although the statute was approved December 22, 1934, this chaotic condition continues up to the present time, thereby preventing the payment of the obligations of the parish and political subdivisions thereof, impairing the credit of the parish, the road districts, and the school board, and the state of Louisiana. Notwithstanding the fact that defendants’ sole complaint is that the statute is unconstitutional, these very proceedings show that defendants not only failed to plead that as a defense in order to have that question forthwith determined judicially, but, when plaintiffs and interveners in this action invited and tendered that issue upon the same grounds urged by the defendants in the form of the written opinion of the district attorney, defendants refused to have the question expeditiously determined by the court and resorted to dilatory pleas.
 

 
 *693
 
 From all of these circumstances and actions by the defendants it is reasonable to conclude. that the defendants have no desire to have this controversy settled at once, but wish to persist in their studied efforts to interfere with and harass the alleged majority members of the police jury, and unduly delay the solution of the problem.
 

 The trial judge, in his reasons for declining to grant the preliminary injunction, states that since the resolutions had been passed by the alleged majority members, that an injunction cannot be issued to restrain something that has already been accomplished. The plaintiffs in the instant •case are not asking the court to restrain the defendants from doing something that has already been done, i, e., prevent the passage of the resolutions, but to prevent or enjoin defendants from continuing to carry into effect their alleged illegal and unlawful resolutions, which show that serious interference has and will result therefrom. Plaintiffs are seeking to have the court protect them against the interference which would naturally result from the defendants persisting in carrying out their resolutions. Their complaint is well founded, because it appears that defendants have arrayed themselves in steady and continuous opposition to the appointees exercising the functions of their offices.
 

 It is clear that a continuation of the policy pursued by the defendants, unless restrained, will result in a multiplicity of lawsuits, which is certainly undesirable. It will also promote continued disorder and confusion. The only legal way that the alleged majority members of the police jury, consisting of the four elected members and the thirteen new members, can be prevented from conducting the affairs of the parish is by the court declaring the act of 1934 unconstitutional. The defendants, by banding together, have no right, by the practices that they have resorted to out of court, to prevent the statute from being executed.
 

 It is our opinion that plaintiffs’ petition alleges and they have shown that the defendants have illegally interfered with the lawful functioning of the police jury, and will continue to do so, unless restrained by a preliminary writ of injunction. It also sufficiently appears that the plaintiffs will suffer irreparable injury as a result thereof, and have no adequate remedy at law to protect themselves. Plaintiffs were manifestly entitled to protection through a writ of preliminary injunction, and the. trial ■judge clearly erred in refusing to grant it.
 

 It is apparent that the matters involved in this controversy are of great public importance, affecting the fisc of the state, parish, and subdivisions thereof. We feel that it is a case which requires the exercise of our supervisory jurisdiction over inferior courts, under section 10 of article 7 of the Constitution of 1921.
 

 For the reasons assigned, the rule nisi is made -absolute, in so far as the writs of certiorari and mandamus are concerned,
 
 *695
 
 and the Honorable W. Carruth Jones, judge of the Nineteenth Judicial District Court, is ordered and directed to issue a writ of preliminary injunction in favor of the plaintiffs and against the defendants, in accordance with the prayer of plaintiffs’ petition; the rule, in reference to the writ of prohibition, and the stay order are vacated, and the case remanded to the district court for further proceedings according to law and not inconsistent with the views herein expressed.