660 So.2d 576 (1995)
Edward L. DAVIS, Appellee,
v.
Larry ENGLISH, Appellant.
No. 28251-CA.
Court of Appeal of Louisiana, Second Circuit.
September 22, 1995.
*577 Roderick K. West, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP, New Orleans, for appellant.
Ronald J. Miciotto, Shreveport, for appellee.
Before MARVIN, SEXTON, NORRIS, BROWN, WILLIAMS and STEWART, JJ., and PRICE, CLARK and SAVOIE, JJ. Pro Tem.
PER CURIAM.
This appeal is from a trial court ruling by Judge Leon Emanuel, which determines that Larry English, a candidate for a state senate seat, lacks the qualifications of a candidate.
Although not clearly and formally assigned as error, we first address the issue of recusation of Judge Emanuel. The recusation of a judge is governed by LSA C.C.P. Art. 151, which provides, in pertinent part:
Art. 151. Grounds
A. A judge of any court, trial or appellate, shall be recused when he is a witness in the cause.
B. A judge of any court, trial or appellate, may be recused when he
. . . . .
(5) Is biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys to such an extent that he would be unable to conduct fair and impartial proceedings.
Mr. English moved to recuse Judge Emanuel based on an alleged "personal and political relationship with the parties in this case and the Senate race for District 39". Judge Charles Scott heard the testimony and argument of counsel relating to this issue and found no basis for recusation. We perceive no error in that ruling. On the testimony elicited in the hearing on the motion to recuse, there is no showing that Judge Emanuel has any bias, personal or political, either for any party adverse to English, or against English himself. This claim of error is completely meritless.
We now move to the merits of this litigation to determine whether Mr. English has the domicile qualifications provided by the Louisiana Constitution of 1974 which provides, in pertinent part:
Art. 3
Sec. 4. Qualifications; Residence and Domicile Requirements; Term; Vacancies Section 4. (A) Age; Residence; Domicile. An elector who at the time of qualification as a candidate has attained the age of eighteen years, resided in the state for the proceeding two years, and been actually domiciled for the preceding year in the legislative district from which he seeks election is eligible for membership in the legislature. (emphasis added.)
Mr. Davis, a registered voter qualified to vote in Senate District 39, has standing to contest the candidacy of Mr. English under LSA R.S. 18:491, raised proper grounds under LSA 18:492 and timely filed his objection to candidacy under LSA R.S. 18:493. The qualifying for Senate District 39 ended September 7, 1995 and this suit was filed September 12, 1995.
The general definition of domicile is contained in LSA-C.C. Art. 38:

*578 The domicile of each citizen is in the parish wherein he had his principal establishment.

The principal establishment is that in which he makes his habitual residence; if he resides alternatively in several places, and nearly as much in one as in another, and has not declared his intention in the manner hereafter prescribed, any one of the said places where he resides may be considered as his principal establishment at the option of the persons whose interests are thereby affected. (emphasis added.)
Senate District 39 is the district from which English seeks political office. The evidence presented shows that during the year period prior to English's qualification for office, the defendant slept more often at 8506 Westbrook (hereafter Westbrook), located in Senate District 38, than at 450 Mayfair (hereafter Mayfair), located in Senate District 39.
Mr. English's wife and children lived at Westbrook, and never lived, ate or slept at Mayfair. His car was seen regularly at Westbrook, and rarely at Mayfair. The school records of one child, who attended a private school, showed Westbrook as the child's home. The defendant listed Westbrook as his home on his driver's license, bar registration, vehicle registration, postal service address, utility company records, telephone listing, deed, homestead exemption and personal banking records.
Mr. English did change his voter registration shortly before qualifying, but had never actually voted in Senate District 39 in the approximately 10 years he had lived on Westbrook. On the other hand, he had voted 18 times in District 38 since moving to Westbrook, and as recently as the 1994 fall elections. The defendant enjoyed the company of his wife and children only on Westbrook, and celebrated family holidays either there or at the residences of the grandparents of the children, but never at Mayfair.
The evidence showed that the defendant paid no rent in money for his use of the Mayfair address, but exchanged legal services for rent. The defendant's testimony was vague about the exact dates on which he stayed at Mayfair. He rarely ate there, and never entertained guests or had any significant social contact with anyone at that address. Testimony supportive of the defendant's testimony concerning overnight stays at Mayfair can best be characterized as scanty.
Importantly, the testimony showed that two other persons, Evora Morrison, the owner, and Cherita Morrison, the owner's adult daughter, had access to Mayfair, and actually stayed at Mayfair during the period of residency claimed by English. Evora Morrison indicated she had occupied Mayfair, described as a small residence, some 70 days between June of 1995 and the date of the trial of this matter. The telephone listing for the Mayfair address was in the name of Cherita Morrison, and Evora Morrison referred to the residence as her family home.
The trial court was thus presented with a factual showing on the one hand of normal home and family life with all its concomitants (Westbrook), and on the other of a scanty showing of sporadic overnight stays combined with a voter registration change (Mayfair). The trial court properly concluded that, as provided by La.C.C. Art. 38, Mr. English's principal establishment, and thus his domicile, was on Westbrook. We find no manifest error in that ruling.
We are cognizant of jurisprudence which indicates that, in close cases, perhaps those contemplated by La.C.C. Art. 38 when it speaks of alternative residences and persons who reside "nearly as much in one as in another", we should favor the candidate's right of political suffrage. Laws governing the conduct of elections should be liberally interpreted so as to promote rather than to defeat candidacy. Slocum v. DeWitt, 374 So.2d 755 (La.App. 3rd Cir.), writ denied, 375 So.2d 1182 (La.1979).
However, this is not such a close case. We are presented, as was the trial court, with a comparison of a home life in three dimensions (Westbrook) compared to a facade of residence (Mayfair). We concur with the First Circuit's views in Messer v. London, 436 So.2d 756 (La.App. 1 Cir.1983).

*579 The term "actually domiciled" of the constitutional provision has been discussed in Mix v. Blanchard, 318 So.2d 125, 127 (La. App. 4th Cir.), writ denied, 320 So.2d 547 (La.1975):
"... in light of the quoted definition the word actually serves to emphasize the residency aspect of domicile. It is interesting to note the dialogue among the delegates to the Constitutional Convention in drafting this article. It is apparent the delegates intended to limit candidacy for political office to citizens who actually live in the district they aspire to represent. The newly drafted constitutional article was designed to eliminate a system under which candidates would establish a `political domicile' from which to seek office even though they chose to live and maintain their families in another area, and were not truly representative of the district from which they sought election."

Messer, supra, at 757.
We are also aware of other presumptions. There is a presumption that a man and wife have the same domicile. Robinson v. Standard Oil Company of Louisiana, 194 La. 904, 195 So. 351 (1940). There is a presumption against change of domicile. In Re Adoption of Rials, 220 La. 484, 56 So.2d 844 (1952). These presumptions operate against the defendant and support the trial court's conclusion that the defendant had not established a domicile in Senate District 39.
While we are loathe to thwart any candidate's heartfelt desire to represent those from an area in which he was born and raised, the Constitution imposes a requirement of actual domicile, which is without question entirely appropriate in a representative democracy. Mr. English did not "reside as nearly as much" in Mayfair as he did in Westbrook after 1994. Westbrook was his domicile beginning in 1980.
Finding no manifest error in this conclusion by the trial court, we affirm. All costs are to be paid by the defendant-appellant, Larry English.
BROWN, J., concurs with reasons.
BROWN, Judge, concurring.
Mr. English was born, reared, schooled, and voted in District 39. His parents still live in the district at the family home. When he married in 1980, he purchased a house outside the district on Westbrook for economic reasons and changed his voter registration. His family continues to live in the Westbrook house. During this period, Mr. English obtained a law degree from Tulane University in New Orleans. He opened a law office in District 39 and continues to be involved in the charitable, civic and political activities of District 39. Throughout the years, he has consistently expressed his desire to represent District 39 in an elected position.
I believe the issue is whether Mr. English initially changed his domicile from District 39. Unfortunately, evidence favorable to Mr. English, such as the pursuit of an education and its continuous economic restraints, were not developed at trial. Thus, I have to distinguish this case from Arnold v. Hughes, 621 So.2d 1139 (La.App. 1st Cir.1993). I cannot say that the trial court was clearly wrong or manifestly erroneous in its conclusion concerning a change in domicile to Mayfair in 1994.
Obviously, Mr. English's heart and soul is domiciled in District 39. It is with great reluctance that I concur in this decision.