|!BROWN, J.,
dissenting.
When an officeholder has vacated an office by no longer meeting the residence or domicile requirements of the office, La. R.S. 18:671 et seq. provides the electorate a remedy that is both expeditious and open to public scrutiny.' The primary public interest served by the statutory provisions is the prompt discovery and declaration of vacant offices so that qualified officeholders may be elected to replace those whose actions have caused their office to become vacant. Accordingly, I do not agree with appellant that these rules of procedure must be strictly construed. Otherwise, the irony would be that a minor deviation from the procedures by a district attorney and/or judge would result in a victory for an officeholder no longer meeting the qualifications of his office and a defeat for the electorate whom the laws are primarily designed to protect. Therefore, the procedures outlined in La.R.S. 18:671 et seq. should be interpreted to require substantial compliance, not strict compliance. I believe they were substantially complied with in this case.
By virtue of La.R.S. 33:1225, the qualifications of a police juror are the same as those for a legislator. Article III, Section 4 of the Louisiana Constitution of 1974 mandates that a legislator must have “been actually domiciled ... in the legislative ■ district from which he seeks election .... ” In Messer v. London, supra at 547, the court stated:
Residence and domicile are not synonymous terms. A person can have several residences but only one domicile. Taylor v. State Farm Mutual Auto. Ins. Co., 248 La. 246, 178 So.2d 238 (1965). Domicile is a person’s principal domestic establishment, as contrasted to a business establishment. A man and wife are presumed to have the | gsame domicile. Robinson v. Standard Oil Company of Louisiana, 194 La. 904, 195 So. 351 (La.1940) ... .(footnote omitted.)
The phrase “actually domiciled” in the Constitution of 1974 requires that one holding legislative office have a real rather than fictitious domicile in the area represented. However, the question of “intention”, the crux of the preceding codal articles, remains viable. See 5 Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts 328.
Further, in Messer, supra at 550, the supreme court specifically found:
Mr. and Mrs. London have remained married. Filing of the lawsuits which have not gone to judgment did not change their status. Absent strong proof to the contrary, it must be assumed that Leonard London is domiciled with his wife and children at the residence he maintains in East Feliciana Parish. This is where his family is established. Despite his frequent absences from home and his business in Baton Rouge, the evidence does not prove that he has any other domestic residence.
Clearly, Mr. Brown was presumed to still be domiciled in his election district until shown by the district attorney to have changed his actual domicile. This case quite simply turns on a question of credibility. In that respect, the trial court, rather than a reviewing court, is in the best position to judge.
An appellate court may not set aside the trial court’s findings of fact in the absence of manifest error, or unless they are clearly wrong. Stobart v. DOTD, 617 So.2d 880 (La.1993). Rosell v. ESCO, 549 So.2d 840 (La.1989). The reviewing court must review the record in its entirety to determine *1285 whether the trial court’s finding was clearly wrong or manifestly erroneous. In Stobart, supra, at 882-883, the supreme court explained the application of this test:
l3[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact-finder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. However, where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Nonetheless, this Court has emphasized that “the reviewing court must always keep in mind that ‘if the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.’ ” (Citations omitted).
This court has recognized that “[t]he reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.” Canter v. Koehring Co., 283 So.2d 716 (La.1973). Thus, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Id.
The majority opinion fails to recognize that the trial court found Mr. Brown’s testimony to be unbelievable. The trial court compared the actuality of a family home in Martin with the illusion of a residence at the Ringgold Street address. Since his marriage in September 2000 until the date of trial, Mr. Brown has made no credible effort to find a home for his family within his election district.
In August 2000, Miranda Loftin purchased a mobile home and located it in Martin which was outside Mr. Brown’s election district. Miranda and Mr. Brown were married in September 2000. In November of |42000, Miranda, in a complaint filed with the sheriff, wrote that Mr. Brown was living in the trailer in Martin and that she wanted him and his belongings out. At some point thereafter the couple reconciled and a child was born. In February 2001, the Adams family moved into the one bedroom Ringgold Street apartment rented by Mr. Brown. This family stayed at that address until August 2001. Mr. Brown worked out of town at Champion Ford in Shreveport and then in April 2001 took a job offshore. He stayed with his family in Martin when he was home. The majority opinion failed to note that Mr. Brown paid all the utilities for the trailer in Martin. In August 2001, when the Adams family moved out, Mr. Brown cut off all of the utilities at the Ringgold Street apartment. The district attorney’s investigator went to the Ringgold Street address and found the apartment unlocked and abandoned. Mr. Brown testified that he disconnected the utilities because, “I have been trying to work out differences with my wife for some time now. Out of an act of good faith that I was going to get a house in town for her and the baby to move to town with me. I told her to turn the utilities off.” By the time of trial, however, Mr. Brown had still made no effort to obtain a “house in town” for his family.
This action arose because Mr. Brown’s constituents could not contact him con *1286 cerning a problem. The Ringgold Street address had no telephone and Mr. Brown could never be found at that address. Further, Mr. Brown did not work in his district and had fewer contacts with that district than the candidate in the case of Davis v. English, 28,251 (La.App.2d Cir.09/22/95), 660 So.2d 576. In Davis, an attorney sought election to the | legislature in a district in which he grew up, attended school, maintained his law practice, where his parents still lived and where he rented a residence. This court sitting en banc affirmed a trial court ruling that the attorney had changed his domicile to a neighboring district when he married and purchased a house for economic reasons.
The trial court rejected Mr. Brown’s testimony. In the light of the entire record, this determination was reasonable. Thus, I respectfully dissent.