Dear Mr. Paxton:
Your request for an Attorney General's Opinion has been assigned to me for research and reply. On behalf of the Sixth Judicial District Attorney's Office, you have asked our opinion as to the proper procedure to use when declaring a mayor's seat vacant. You would also like to know what factors are used to determine if a vacancy exists within the office of mayor, and if the board of aldermen has the authority to declare a mayor's seat vacant. The information provided with your request indicates that the residence and domicile of the current mayor of Waterproof are at issue.
The Town of Waterproof is a Lawrason Act municipality and the provisions of La.R.S. 33:321, et seq. apply. La.R.S. 33:384 lists the qualifications for the office of mayor and provides:
 The mayor shall be an elector of the municipality who at the time of qualification as a candidate for the office of mayor shall have been domiciled and actually resided for at least the immediately preceding year in the municipality.
Article VII, Section 13 of the 1921 Louisiana Constitution provided that the office of mayor would become vacant should the incumbent move his residence outside of town. However, this provision was not carried forward in the 1974 Constitution, nor was it carried forward as statutory law. *Page 2 
Presently, the only applicable constitutional provision is Article X, Section 28 of the 1974 Louisiana Constitution which states "[a] vacancy, as used in this Constitution, shall occur in the event of death, resignation, removal by any means, or failure to take office for any reason." Also, La.R.S. 18:581(3) defines the term "vacancy" in an elective office and provides:
 "Vacancy" occurs in an elective office when the office is or will be unoccupied by reason of the death of the official who was elected to the office, or by reason of his retirement or resignation, removal from office by any means, failure to take office for any reason, or when it becomes certain that the person elected to the office will not take the office on the day when the term for which he was elected commences, or when the person elected to or holding the office no longer meets the residence or domicile requirements of that office, any declaration of retention of domicile to the contrary notwithstanding, or when an office is created due to a reclassification of a municipality. (Emphasis added.)
The Louisiana Second Circuit Court of Appeals in Williamson v. Villageof Baskin[1] held "[t]he fact of change of residence may ipso facto, automatically give grounds for having an office declared vacant and the officer removed, but it cannot be said that the office is vacated until such is declared by a court or other authorized official or governing body." In accordance with Williamson, this office has consistently opined that when a local official moves from the district from which he is elected, the board of aldermen as the governing body may declare the office vacant.[2] Therefore, it is the opinion of this office that a vacancy does not automatically occur when a mayor of a Lawrason Act municipality moves outside of the town. However, the board of aldermen has the authority to declare the office of mayor vacant provided the current mayor no longer meets the residency or domicile requirements of that office.
The fundamental issues the board of aldermen must address in determining if a vacancy exists within the office of mayor is whether or not the mayor is domiciled and actually resides within the municipality. Turning to the issue of domicile first, La.C.C. art. 38 defines the domicile of a natural person as "the place of his habitual residence." The terms "residence" and "domicile" are not synonymous.[3] A natural person may reside in several places but may not have more than one domicile.[4] *Page 3 
Domicile is maintained until acquisition of a new domicile.[5] A natural person changes domicile when he moves his residence to another location with the intent to make that location his habitual residence.[6] There is a presumption against a change in domicile.[7] Proof of a person's intent to establish or change domicile depends on the circumstances.[8] When a person holds public office, the law presumes that his domicile continues in the place where he exercises his public functions.[9]
Domicile is an issue of fact that must be determined on a case-by-case basis.[10] Domicile consists of two elements, residence and intent to remain.[11] If the official has more than one residence, intention is the determinative factor in ascertaining the location of his domicile.[12] In establishing domicile, intent is based on the actual state of facts and not what one declares them to be.[13] Various indicia have been set forth to prove, by a totality of the circumstances, whether an individual has established a domicile. Among these are where a person sleeps, takes his meals, has established his household, and surrounds himself with family and the comforts of domestic life.[14] In addition, courts have looked at where the person is registered to vote, where his motor vehicles are registered, where he maintains bank accounts and receives mail, where he transacts business affairs, and where he leases or owns property.[15]
However, courts have given great weight to a person's intent when ascertaining the location of his domicile. In Wilson v. Shea, [16] the court opined that there is a presumption against a change of domicile, and that service in public office and candidacy for re-election strongly negate any intention on a candidate's part to change his domicile.[17]
In Wilson, the court addressed whether a judicial candidate for reelection met the qualification domicile requirements.[18] The judge had resided in Orleans Parish until a fire destroyed his home. The judge then moved into an apartment within the same parish. Less than two years later, the judge remarried and began residing with his wife at her residence in Jefferson Parish.[19] Although the facts established that the judge resided in a neighboring *Page 4 
parish, the Court stated "the only question was whether [the judge] intended to change his domicile to his wife's residence located in Jefferson Parish."[20]
Moreover, in Autin v. Terrebonne, supra, the court stated that although the facts established the official did not own a residence with water, gas, lights, or telephone within the town limits, intent to be domiciled within the town was established by the totality of the circumstances. In Autin, a suit was brought to disqualify Terrebonne, a candidate for mayor of the Town of Golden Meadow, alleging Terrebonne was not domiciled within the city limits.[21] Terrebonne registered as a candidate for mayor in August 1992, listing his address as 1111-A Bayou Drive in Golden Meadow.[22] He and his wife were born and raised in Golden Meadow and lived the majority of their lives in the town. Terrebonne's original home in Golden Meadow was the subject of a foreclosure in 1987. Thereafter, the couple rented a house in Golden Meadow. In 1990, the house was sold and the couple moved away from the property. In 1989, the couple purchased a "fishing camp" in Fourchon, Louisiana where they resided 75-80% of the time.[23]
Also, Terrebonne owned two businesses, both in Golden Meadow.[24]
Terrebonne's businesses located in Golden Meadow were situated on property owned by his wife and her family at 1111 North Bayou Drive. At that location, there were two additional buildings: a house owned by Terrebonne's mother-in-law and a wooden building Terrebonne had moved to the location. The couple also resided with Terrebonne's mother-in-law at her residence located on North Bayou Drive. The wooden building was 25 ft x 18 ft. It did not have water, gas, lights, or telephone. It was used to store family items and was intended to be used in the future, upon completion, as an apartment for Terrebonne and his wife.[25]
The court held that in view of the fact that Terrebonne maintained multiple residences, intent was the determinative factor in ascertaining the location of his domicile. The court's decision was based on multiple facts established at trial. In reaching its decision, the court stated:
 Although the evidence on this issue is conflicting, there is ample support in the record for the trial court's conclusion that the intention of the defendant was to maintain his domicile in Golden Meadow. Some of the indicia of this intention is that the defendant was born and raised in Golden Meadow. He registered to vote and *Page 5 
voted there. He received his mail there. He belonged to the Catholic Church and maintains active membership in associations in Golden Meadow. The couples' drivers' licenses bear a Golden Meadow address, as did their vehicle registration. Mr. Terrebonne owned a business there and, until a down turn in his financial condition, he owned a house in Golden Meadow. He thereafter, rented residential property in Golden Meadow. He purchased a building which he had moved to a piece of land owned by his wife and her family in Golden Meadow. The building, which was gradually being renovated, was intended to serve as an apartment for the defendant and his wife. In the interim, the couple resided in this municipality, on an average of two to three days per week, and stayed with Mrs. Terrebonne's mother at those times.[26]
As mentioned above, the courts have declared that when a local official has more than one residence, intent is the determinative factor in ascertaining the location of his domicile. The issue of a local official's domicile is one that the board of aldermen must determine on a case-by-case basis by looking at the totality of the circumstances.
The second issue the board of aldermen must address is whether or not the mayor "actually resides" within the municipality. A person may maintain more than one residence, and the fact that one is maintained for political purposes does not itself prevent the residence from being actual and bona fide.[27] However, there must be actual, physical use or occupation of the quarters for living purposes before a bona fide residence is established.[28] Even a temporary absence from a place of residence does not necessarily mean that a person ceases to be a resident.[29] The rationale is that residency is not lost as long as residence exists in fact with the requisite intent.
However, Louisiana courts have found a legal distinction between the requirement that a candidate "actually resided" at a place and the requirement that a candidate shall have been a "resident" of a place. The former requirement that a candidate "actually resided" at a place is a higher, more stringent standard requiring a stronger and more regular presence at the residence, whereas the requirement of simple residency is a lower threshold.[30]
This view was reiterated in Davis v. English, [31] where the court reasoned that the word "actually" serves to emphasize the residence aspect, and that the apparent *Page 6 
intent of the delegates to the Constitutional Convention was to limit candidacy for political office to citizens who actually live in the district they aspire to represent. Where the word "actually" is used, the court inferred that the constitutional article was designed to eliminate a system under which candidates would establish a "political domicile" from which to seek office even though they chose to live and maintain their families in another area and were not truly representative of the district in which they sought election. InBradley v. Theus, [32] the court drew the same conclusion, noting that the qualifications for mayor were amended in 1993 when the words "shall have been domiciled" were changed to "shall have been domiciled and actually resided."[33]
Furthermore, the Louisiana Supreme Court has defined the term "actual residence" as "a real residence, not a fictitious residence simply designed to circumvent the residency requirements."[34] In Russell v.Goldsby, [35] the mayor of Amite, Dr. Goldsby, sought to qualify for re-election, but a petition to disqualify him was filed based on the allegation that he was not domiciled and did not "actually reside" in Amite during the year prior to the qualifying election as required by La.R.S. 33:384.[36] Dr. Goldsby, owned a home on Division Street in Amite, Louisiana, and he maintained a medical practice in the town as well.[37] Dr. Goldsby also owned "a camp" on Goldsby Lane outside of the town limits.[38]
The Supreme Court held that while he maintained several residences, Dr. Goldsby's "actual residency" was established within Amite at the Division Street address.[39] The court's decision was based on multiple facts established at trial. In reaching its decision, the Supreme Court stated:
 The record establishes that Dr. Goldsby eats, naps, and entertains at the Division Street address. Moreover, Dr. Goldsby sleeps overnight at the Division Street house on occasion. He keeps changes of clothing and toiletry items at the Division Street house, claims a homestead exemption on this property, receives mail at the Division Street address, and uses this address on his driver's license. All these factors show Dr. Goldsby has significant connections to the Division Street address, and that his residency at this address is real rather than fictitious.
 We recognize that Dr. Goldsby does not spend the majority of his nights at the Division Street address. However, there is no *Page 7 
evidence that Dr. Goldsby intended to abandon Division Street as his actual residence merely because he spent less time there. Courts must be cognizant of the realities of modern life, in which the demands of a career and other factors often require people to spend a large amount of time at different locations. Nothing in La.R.S. 33:384 prohibits a candidate from having more than one actual residence; rather, the statute focuses on whether the residence within the municipality is in fact an actual residence — i.e., a real residence, not a fictitious residence simply designed to circumvent the residency requirements. The record in this case demonstrates conclusively that plaintiff has failed to show Dr. Goldsby's Division Street residence is merely a fictitious residence.[40]
In conclusion, the determination of whether a mayor "actually resides" within the municipality is a question of fact to be determined by the totality of the circumstances. Mere isolated facts cannot be relied on wholly to determine the question. Whether a local official "actually resides" in a particular place, will depend upon the extent of his continued contact and presence in that place, the expected duration of the absence and his intention to return to that place.[41]
Based on the foregoing, the board of alderman must carefully consider all factors surrounding the mayor's move to determine if his intent is to change his domicile and if the mayor "actually resides" within the municipality. If the board determines that a vacancy has occurred and the unexpired term exceeds one year, the board must issue a proclamation calling for a special election to fill the office.[42]
In addition to the board of aldermen declaring a vacancy, the Election Code[43] also provides the procedure by which a judgment declaring the office vacant may be obtained. Under La.R.S. 18:672, "[w]hen any voter lawfully registered in the district or geographical area from which an officeholder has been elected . . . has reason to believe that the officeholder no longer meets the residence or domicile requirements of that office, the voter may make a written complaint of that fact to the proper official." The proper official must investigate and provide a written opinion, with reasons, as to whether the officeholder meets the residence or domicile requirements of the office he holds to the complainant and to the legislative or executive agency, board, commission, governing authority, or other body or entity of the state or of any political subdivision, to which the officeholder has been elected or appointed within twenty days of receipt of the complaint. The opinion shall also be published in the official journal of the parish of the *Page 8 
officeholder's designated domicile.[44] If his opinion is that the officeholder no longer meets the residence or domicile requirements of his office, the proper official shall institute suit in the district court of the officeholder's designated domicile to obtain a judgment declaring the office vacant within ten days after the issuance of his opinion.[45] For purposes of the procedure in La.R.S. 18:671 et seq., "proper official" means the district attorney of the municipal officeholder's designated domicile.[46]
Finally, within your request, you inquire if the Attorney General's Office may institute an action brought under La.R.S. 18:671 et seq. As stated above, La.R.S. 18:671 et seq. specifically provides that the proper official to initiate suit to obtain a judgment declaring a municipal office vacant is the district attorney of the officeholder's designated domicile. Furthermore, La.Const. Art. IV, Sec. 8 provides the powers and duties of the Louisiana Attorney General. La.Const. Art. IV, Sec. 8 provides in pertinent part:
 As necessary for the assertion or protection of any right or interest of the state, the attorney general shall have authority (1) to institute, prosecute, or intervene in any civil action or proceeding; (2) upon the written request of a district attorney, to advise and assist in the prosecution of any criminal case; and (3) for cause, when authorized by the court which would have original jurisdiction and subject to judicial review, (a) to institute, prosecute, or intervene in any criminal action or proceeding or (b) to supersede any attorney representing the state, civil or criminal action.
 (Emphasis added.)
In Saint v. Allen, [47] the Louisiana Supreme Court interpreted the term "interest" within the ancestor provision to La.Const. Art. IV, Sec. 8.[48] The court stated: *Page 9 
 Under this provision it is the duty of the Attorney General and his assistants to prosecute and defend all suits or other legal proceedings to which the state is a party, and to have charge of all legal matters in which the state, as a distinct entity, apart from other entities or corporate agencies it may create, has an interest. It was not intended that the word, `interest,' used in this section, should be received or interpreted in its broadest sense, in connection with the interests, possessed by the state. Such an interpretation would make the accomplishment of the duties of the Attorney General and his assistants, next to impossible, if not impossible. Therefore, so far as relates to the Constitution, that instrument, with reference to the duties of the Attorney General and his assistants, has confined, by implication, the duties, there demanded to be rendered, to those interests, possessed by the state, as a distinct entity, and has left it to the Legislature to impose such other duties upon those officials as it may deem proper to do from time to time.[49]
Although the court in Saint interpreted the 1921 constitutional provision, it should be noted that Article IV Sec. 8 of the 1974 Constitution retained the same language within the 1921 provision pertaining to the Attorney General's authority to assert and protect the interest of the State. Based on the foregoing, it is the opinion of this office that the Attorney General cannot institute, prosecute, or intervene in any suit regarding the declaration of a vacancy within the office of a mayor. The state is not a party in such a suit, nor does the state, as a distinct entity, have an interest.
Also, your office cannot recuse itself from an action brought under La.R.S. 18:674 in order for the Attorney General's Office to proceed. While La.C.Cr.P. art. 682 allows the Attorney General to replace a district attorney when a district attorney recuses himself, this provision only applies to criminal suits, not civil suits. Therefore, your office cannot recuse itself and allow the Attorney General's office to proceed with the suit.
In conclusion, it is the opinion of this office that a vacany does not automatically occur when a mayor of a Lawrason Act municipality moves outside of the municipality. However, the board of aldermen may declare a vacancy within the office of mayor provided the board determines the mayor is no longer domiciled or "actually residing" within the municipality. In reaching its determination, the board of aldermen must carefully consider all factors surrounding the mayor's move to determine if his intent is to change his domicile and if the mayor "actually *Page 10 
resides" within the municipality. Also, La.R.S. 18:671 et seq. provides for the procedure to obtain a judgment declaring an office vacant. Under these provisions, the district attorney of the municipal officeholder's designated domicile is the proper party to bring such an action. The Attorney General's Office cannot institute such a suit in regards to a municipal officeholder, nor can the Attorney General's Office proceed with the suit if the district attorney's office recuses itself.
We hope that this sufficiently answers your inquiry. However, if we may be of further assistance, please do not hesitate to contact our Office.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 By:__________________________
 ERIN C. DAY
 Assistant Attorney General
 JDC/ECD/sfj
[1] 339 So.2d 474 (La.App. 2 Cir. 1976), writ denied, 341 So.2d 1126
(La. Feb 11, 1977).
[2] See La. Atty. Gen. Op. Nos. 77-932, 78-381, 80-1171,92-262, and 00-127.
[3] Wilson v. Butler, 513 So.2d 304 (La.App. 1 Cir. 1987).
[4] La.C.C. art. 39.
[5] La.C.C. art. 44.
[6] Id.
[7] Messer v. London, 438 So.2d 546 (La. 1983).
[8] La.C.C. art. 45.
[9] Id. at 547.
[10] Landiak v. Richmond, 2005-0758 (La. 3/24/05), 899 So.2d 535,citing, Darnell v. Alcorn, 99-2405 (La.App. 4 Cir. 9/24/99),757 So.2d 716.
[11] McClendon v. Bel, 2000-2011 (La.App. 1 Cir 9/7/00),797 So.2d 700, 704.
[12] McClendon at 704.
[13] Successions of Rhea, 227 La. 214, 78 So.2d 838 (1955).
[14] Sheets v. Sheets, 612 So.2d 842, 844 (La.App. 1 Cir. 1992).
[15] Autin v. Terrebonne, 612 So.2d 107 (La.App. 1 Cir. 1992).
[16] 90-1449 (La.App. 4 Cir. 8/17/90), 565 So.2d 1105.
[17] Id.
[18] Id.
[19] Id.
[20] Id.
[21] Autin at 108.
[22] Id.
[23] Id. at 109
[24] Id.
[25] Id.
[26] Id. at 110.
[27] Id. at 108.
[28] Mclendon, 797 So.2d at 705.
[29] Williford v. Grady, 96-1040 (La.App. 3 Cir. 8/5/96),688 So.2d 1072.
[30] Bradley v. Theus, 28,714 (La.App. 2 Cir. 2/20/96),668 So.2d 1304, 1038, writ denied, 96-0469 (La. 2/26/96), 668 So.2d 355.
[31] 28,251 (La.App. 2 Cir. 09/22/95), 660 So.2d 576.
[32] Bradley at 1308-1309.
[33] See Act 522 of the 1993 Regular Session of the Louisiana Legislature.
[34] Russell v. Goldsby, 2000-2595 (La. 9/22/00), 780 So.2d 1048,1052.
[35] Id.
[36] Id.
[37] Id.
[38] Id.
[39] Id.
[40] Id.
[41] See La. Atty. Gen. Op. Nos. 02-47 and 91-241.
[42] See La.R.S. 18:601 et seq.
[43] La.R.S. 18:1 et seq.
[44] La.R.S. 18:673.
[45] La.R.S. 18:674.
[46] La.R.S. 18:671.
[47] 172 La. 350, 134 So. 246 (La. 1931).
[48] Art. VII Sec. 56 of the 1921 Louisiana Constitution provided in pertinent part:
 [The Attorney General and the assistants] shall attend to, and have charge of all legal matters in which the State has an interest, or to which the State is a party, with power and authority to institute and prosecute or to intervene in any and all suits or other proceedings, civil or criminal, as they may deem necessary for the assertion or protection of the rights and interests of the State. They shall exercise supervision over the several district attorneys throughout the State, and perform all other duties imposed by law.' (Emphasis added.)
[49] Id. at 359.